UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BLANCA MEZA, by and through her
Guardian, Aide Hernandez; DESTINY
BELANGER, by and through her Guardian,
Julie Belanger; on behalf of themselves and
all others similarly situated; and
DISABILITY RIGHTS FLORIDA,

          Plaintiffs,                         Case No.

v.

SIMONE MARSTILLER, in her official
capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

          Defendant.

_____/

**VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

## I.      PRELIMINARY STATEMENT

1.    Plaintiffs bring this action to compel the Florida Agency for Health

Care Administration (AHCA) to cover medically necessary incontinence supplies

through Florida's Medicaid program. Plaintiffs are medically fragile adults each

with bladder and bowel incontinence. As low-income Florida residents with

significant disabilities, they receive their health services through Florida's Medicaid program.

2.      Plaintiffs' physicians have prescribed certain incontinence supplies, including briefs and underpads, as medically necessary to treat Plaintiffs' incontinence, keep their skin dry and clean, prevent skin breakdowns and infections, and maintain their ability to live in the community.

3.      Prior to 2010, Florida Medicaid did not cover incontinence supplies for any recipients, even those younger than age 21. On January 28, 2010, District Court Judge Alan Gold ordered Defendant to cover incontinence briefs for children under age 21 based on the mandatory Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") service of the federal Medicaid Act as set forth in 42 U.S.C. §§1396a(a)(10)(A); 1396a(a)(43); 1396d(a)(4)(B), 1396d(r)(5).

4.      Defendant – with limited exceptions that do not apply to the named Plaintiffs or putative class – excludes coverage of incontinence supplies (including briefs, diapers, protective underwear, pull-ons, liners, shields, guards, pads, and undergarments) for Medicaid recipients aged 21 and older (hereafter, "adults").

5.      For adult Medicaid recipients, Defendant will provide Medicaid coverage of incontinence supplies under only three circumstances: if the Medicaid enrolled individual (1) has been diagnosed with AIDS and has history of AIDS-related opportunistic infection, (2) resides in a nursing facility, or (3) is enrolled in

a Home and Community Based Services (HCBS) Medicaid Waiver. These HCBS waivers have stringent eligibility requirements, a limited number of enrollment slots, and sizable waitlists.

6.     Defendant covered Plaintiffs' incontinence supplies under the state Medicaid program for years, but upon their 21st birthdays, Defendant ceased Medicaid coverage for these supplies even though Plaintiffs' conditions, need for incontinence supplies as treatment, ability to benefit from these items as treatment, and the specific items that constitute this treatment, did not change.

7.     Plaintiffs therefore seek declaratory and injunctive relief under 42 U.S.C. §1983 to enjoin Defendant from denying coverage of incontinence supplies for named Plaintiffs and those similarly situated in violation of Medicaid's mandatory coverage provisions under 42 U.S.C. §§1396a(a)(10)(A), 1396a(a)(10)(D); 1396d(a)(4), and under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 et seq. and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794.

## II.     JURISDICTION AND VENUE

8.     Jurisdiction is conferred on this Court by 28 U.S.C. §1331, which provides for original jurisdiction over all civil suits involving questions of federal law, and 28 U.S.C. §§1343(a)(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. §1983 to redress the deprivation

under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress. This action is also authorized by the ADA, 42 U.S.C. §12133 and Section 504, 29 U.S.C. §794a(a)(2).

9.     Plaintiffs seek declaratory, injunctive, and other appropriate relief, pursuant to 28 U.S.C. §§2201 and 2202; 29 U.S.C. §794a; Fed. R. Civ. P. 23, 57, and 65; and 42 U.S.C. §§1983, 1988 and 12133.

10.     Venue for this action lies in this District pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

### III.   PARTIES

11.     Named Plaintiff, Blanca Meza, is a 22-year-old woman who is enrolled in Florida's Medicaid program. She resides in Duval County, Florida. She is diagnosed with spastic quadriplegic cerebral palsy, muscle spasticity, neuromuscular scoliosis, and partial epilepsy. She is fully incontinent of bladder and bowel. As a result of her disabilities, Blanca is substantially limited in her physical and cognitive abilities and requires assistance with major life activities, including dressing, feeding, mobility, and bowel and bladder care.

12.     Named Plaintiff, Destiny Belanger, is a 22-year-old woman who is enrolled in Florida's Medicaid program. She resides in St. Johns County, Florida. She is diagnosed with encephalopathy and seizure disorder. She is fully incontinent

4

of bladder and bowel. As a result of her disabilities, Destiny is substantially limited in her physical and cognitive abilities and requires assistance with major life activities, including dressing, feeding, communication, and bowel and bladder care.

13.     Plaintiff, Disability Rights Florida (DRF), is Florida's federally funded protection and advocacy (P&A) system and is statutorily enabled to pursue legal remedies on behalf of persons with disabilities. *See* 29 U.S.C. §§794e(a)(1)(B) & (f)(2) (incorporating the authorities granted in 42 U.S.C. §15043 for those individuals who have disabilities other than a developmental disability); *see also* 34 C.F.R. §381.3(a)(2) (authorizing the P&A system to "pursue legal remedies…to ensure the protection of, and advocacy for, the rights of eligible individuals with disabilities within the State..."). Specifically, DRF is authorized by federal law to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals within the State who are or who may be eligible for treatment, services, or habilitation…." 29 U.S.C. §774e(f)(2); 42 U.S.C. §15043(a)(2)(A)(i). Furthermore, under federal law, DRF is required to develop a statement of objectives and priorities on an annual basis, and provide to the public, including individuals with disabilities…an opportunity to comment on the [P&A's] objectives and priorities…." 29 U.S.C. §794e(f)(5); 34 C.F.R. §381.3(a)(5). DRF's

board is composed of individuals with disabilities and their families and advocates. As part of its 2022 Goals, Priorities, and Objectives, DRF seeks to: "[a]dvocate for individuals with disabilities to have access to medically necessary healthcare and other community-based services." Thus, all individuals with disabilities in need of legal assistance to secure remedies that protect their access to medically necessary treatment and services, including Medicaid coverage of incontinence supplies, are DRF constituents. DRF therefore has standing to represent its constituents who are adversely affected by Defendant's exclusion of Medicaid coverage for incontinence supplies, in particular those individuals who are adults and, as part of their disability, are diagnosed with bowel and/or bladder incontinence, and prescribed incontinence supplies as treatment.

14.     Defendant, Simone Marstiller, is the Secretary of Florida's Agency for Healthcare Administration (AHCA). She has overall responsibility for AHCA, which is the "single state agency" responsible for administration of Florida's Medicaid program. *See* 42 U.S.C. §1396a(a)(5); Fla. Stat. §§20.42; 409.902(1). She is sued here in her official capacity.

15.     Defendant's agency, AHCA, is a recipient of "federal financial assistance" as that term is used in Section 504, 29 U.S.C. §794, and a "public entity" as that term is defined in Title II of the ADA, 42 U.S.C. §12131(1).

6

## IV.   CLASS ALLEGATIONS

16.    Plaintiffs bring this class action on behalf of themselves, and all other individuals similarly situated in the state of Florida pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

17.    Plaintiffs bring this case as a statewide class action on behalf of:

> All Florida Medicaid recipients whose prescription for incontinence supplies has been or will be denied Medicaid coverage based on Defendant's exclusion of those supplies for recipients aged 21 and older.

18.    The requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure are met for the following reasons:

a.    The class is so numerous that joinder of all members is impracticable. Plaintiffs estimate that, at least, 96 individuals per year lose Medicaid coverage of incontinence supplies upon reaching their 21st birthday. Joinder of the class is also impracticable because the harm stems from a statewide policy that impacts present and future members, many diagnosed with cognitive disabilities who are unaware that their federal rights are being violated.

b.    The claims of the named Plaintiffs and putative class raise common questions of law and fact. The question of law common

7

to the class is whether Defendant's denial of coverage of incontinence supplies for Medicaid beneficiaries aged 21 or older violates federal Medicaid law, Section 504 of the Rehabilitation Act, and Title II of the ADA. Among the common questions of fact are: (1) whether Defendant excludes Medicaid coverage for incontinence supplies on the basis that an individual is age 21 or older; (2) whether named Plaintiffs and putative class members are categorically needy under the federal Medicaid Act; (3) whether the named Plaintiffs and putative class are over age 21; and (4) whether the named Plaintiffs and putative class have been or will be denied Medicaid coverage of incontinence supplies based on their age.

c.   The claims of the Plaintiffs are typical of the claims of the class in that all the individual Plaintiffs and members of the class are or will be subject to Defendant's policy to deny Medicaid coverage of necessary incontinence supplies for all Medicaid beneficiaries aged 21 and older.

d.   The representative Plaintiffs – Blanca Meza and Destiny Belanger – will fairly and adequately protect the rights of the class because they suffer from the same deprivation as the other

class members and have been denied the same federal rights that they seek to enforce on their own behalf and on behalf of those other class members.

e. Plaintiffs' interests in obtaining injunctive relief for the violations of their rights and privileges are consistent with and not antagonistic to those of any person within the class.

f. The interests of the class will be adequately protected because the Plaintiffs are represented by attorneys with experience in Medicaid class action litigation, including litigation regarding Medicaid coverage of incontinence supplies and other equipment and supplies for both children and adults.

19. Defendant has acted on grounds generally applicable to the class by violating provisions of the federal Medicaid Act and disability discrimination laws thereby making it appropriate for declaratory and injunctive relief on behalf of the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## V.  STATUTORY AND REGULATORY FRAMEWORK

A. Federal and State Requirements for Florida's Medicaid Program

20. The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396w-6, establishes a medical assistance program cooperatively funded by the federal and state governments.

9

21.     Medicaid is designed to "enable[e] each State, as far as practicable...to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence and self-care..." 42 U.S.C. §1396-1.

22.     The Centers for Medicare & Medicaid Services (CMS) of the United States Department of Health and Human Services is the agency that administers Medicaid at the federal level, including publishing rules and guidelines. These rules, regulations, and guidance are set forth in 42 C.F.R. §§430.0-483.480, and in the CMS *State Medicaid Manual* and are binding on all states that participate in Medicaid.

23.      A state's participation in Medicaid is voluntary. Once a state elects to participate, it must adhere to the federal legal requirements, as provided by the United States Constitution, the Medicaid Act, and the rules, regulations, and guidance from CMS.

24.     Florida has elected to participate in the Medicaid program. Fla. Stat. §§409.901-. 9205. The state of Florida designated AHCA as the single state Medicaid agency. Fla. Stat. §409.902(1).

25.     As a participant in the Medicaid program, the state must adopt a plan that meets the requirements of the Medicaid Act (State Plan Medicaid, or State Plan). 42 U.S.C. §1396; 42 C.F.R. §430.12.

26.     The Medicaid Act requires that the provisions of the State Medicaid Plan become mandatory upon, and must be in effect in, all political subdivisions of the state. 42 U.S.C. §1396a(a)(1); 42 C.F.R. §431.50.

27.     The Medicaid Act includes mandatory and optional eligibility groups and mandatory and optional service coverage requirements. 42 U.S.C. §§1396a(a)(10); 1396d(a).

28.     The Act requires states to cover individuals who are "categorically needy." 42 U.S.C. §1396a(a)(10)(A). The categorically needy include persons who are aged, blind, or disabled, working disabled individuals, and certain children and pregnant women who meet federal poverty level standards, and families and children who meet the eligibility standards of the now-repealed AFDC program.

29.     Specifically, individuals who are aged, blind, or disabled and are eligible for Supplemental Security Income (SSI) are categorically needy. 42 U.S.C. §1396a(a)(10)(A)(i)(II).

30.     If an eligible individual applies for Florida's State Plan Medicaid program, the state must enroll the individual. Florida cannot cap the number of slots in its State Plan Medicaid program.

11

31.     Under Medicaid, coverage of certain services in its State Plan are mandatory, 42 U.S.C. §§1396a(a)(10)(A), 1396d(a). 42 C.F.R. §§440.210, 440.220, while coverage of other services is optional. 42 U.S.C. §§1396a(a)(10); 42 C.F.R. §440.225.

32.     Nursing facility services for individuals aged 21 and older is a mandatory service under Medicaid that the state must provide as part of its State Plan. 42 U.S.C. §1396d(a)(4)(A). Furthermore, States must "provide…for the inclusion of home health services for any individual who, under the State plan, is entitled to nursing facility services…." 42 U.S.C. §1396a(a)(10)(D). Thus, home health services are a mandatory benefit category for Florida Medicaid recipients. *Id.*

33.     Home health services are provided to the Medicaid recipient at her place of residence. A required component of home health services is "medical supplies, equipment, and appliances suitable for use in the home." 42 C.F.R. §§440.70(a)(1), (b)(3).  Regarding the scope of coverage of this service, federal regulations state that Medicaid programs "are prohibited from having absolute exclusions of coverage on medical equipment, supplies, or appliances." 42 C.F.R. §440.70(b)(3)(v).

34.     CMS states that allowing coverage to waiver recipients is not an

acceptable exception to the prohibition on categorical exclusion of items that fit the

definition of medical supplies:

> "the proposed standard definitions [including medical supplies, 42
> C.F.R. §440.70(b)(3)(i)] were intended to ensure that such items will
> be available to all who are entitled to the mandatory home health
> benefit, and not restricted to individuals receiving targeted benefits
> through section 1915(c) home and community-based services (HCBS)
> waivers or the section 1915(i) HCBS state plan option. Items that
> meet the criteria for coverage under the home health benefit would be
> covered as such."

CMS, Medicaid Program; Face-to-Face Requirements for Home Health Services;
Policy Changes and Clarifications Related to Home Health, 81 Fed. Reg. 5530,
5532-33 (Feb. 2, 2016), accessible at:
https://www.federalregister.gov/documents/2016/02/02/2016-01585/medicaid-
program-face-to-face-requirements-for-home-health-services-policy-changes-and

35.     Under federal law and as classified by Florida and numerous other

states, incontinence supplies are medical supply items and, thus, a home health

service. Incontinence supplies such as briefs, underpads, and other items meet the

federal Medicaid regulatory definitions of medical supplies and are classified by

Florida Medicaid as medical supplies.

B. Disability Discrimination Laws: Section 504 and Title II of the ADA

36.     The ADA, codified at 42 U.S.C. §§12101 – 12213, was enacted with

the "elimination of discrimination against individuals with disabilities," as its

purpose and objective. 42 U.S.C. §12101(b)(1).

13

37.     Title II of the ADA prohibits discrimination against individuals with disabilities by public entities, including state and local governments, their departments, and agencies. 42 U.S.C. §§12131, 12132. "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132; 28 C.F.R. §§35.130(b)(1)(iv), 35.130(b)(7), 35.130(b)(8), 35.130(d).

38.     The ADA prohibits unjustified segregation of people with disabilities into institutions or in their homes and requires services, programs, and activities of state and local government to be administered in "the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §35.130(d).

39.     The ADA requires state governments and agencies to make reasonable modifications to policies, practices, and procedures, including non-necessary eligibility criteria and methods of administration, to avoid discrimination based on disability. 28 C.F.R. §35.130(b)(7).

40.     Section 504, 29 U.S.C. §794, also prohibits discrimination against individuals with disabilities by any program or activity, including any department or agency of a State government, receiving Federal financial assistance. 29 U.S.C. §794(a); (b). "No otherwise qualified individual with a disability … shall, solely

14

by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. §794; 45 C.F.R. §§84.4(a), 84.4(b)(1)(i), (iv), & (vii); 84.4(b)(2); 84.52(a)(1), (4) & (5). Federal spending that constitutes Medicaid cost-sharing with defendant is federal financial assistance.

41.     Section 504 prohibits unjustified segregation of people with disabilities into institutions or in their homes and requires services, programs, and activities of state and local governments to be administered in "the most integrated setting appropriate to the needs of qualified individuals with disabilities." 45 C.F.R. §84.4(b)(2); *see also* 28 C.F.R. §41.51(d).

42.     Section 504 requires federally funded state governments and agencies to make reasonable modifications to policies, practices, and procedures, including non-necessary eligibility criteria and methods of administration, to avoid discrimination on the basis of disability. 29 U.S.C. §794(a).

## VI.    STATEMENT OF FACTS

  A. Description of Florida's Limited Coverage of Incontinence Supplies

43.     Under federal law, Florida must provide all mandatory State Plan Medicaid services to Medicaid beneficiaries, including home health services. 42 U.S.C. §1396a(a)(10)(D). Florida law acknowledges this coverage. Fla. Stat. §409.905(4).

44.     Defendant categorically excludes "incontinence briefs, diapers, protective underwear, pull-ons, liners, shields, guards, pads, and undergarments" as a covered medical supply items under the Medicaid home health care benefit category for recipients who are age 21 and older; limiting the coverage to individuals aged 4 through 20 years. *See* Fla. Admin Code R. 59G-4.070 (incorporating by reference Defendant's "Durable Medical Equipment and Medical Supply Services Coverage and Limitations Handbook" accessible at:

https://ahca.myflorida.com/medicaid/review/Specific/CL_10_100601_DME_ver1_0.pdf). The coverage policy further states that "diapers and incontinence briefs of any kind for recipients 21 years and older" are considered "non-covered items." *Id.*

45.     Defendant covers incontinence supplies for adults under Florida's Medicaid program in only three instances. First, it covers incontinence supplies for adults who reside in a nursing facility. *See* Fla. Admin. Code R. 59G-4.200 (incorporating by reference Defendant's "Medicaid Nursing Facility Services Coverage Policy" accessible at:

https://www.flrules.org/gateway/readRefFile.asp?refId=6634&filename=Nursing_Facility_Services_Coverage_Policy_Proposed.pdf).

46.     Second, Defendant covers incontinence supplies for those adults diagnosed with AIDS and who have a history of AIDS related opportunistic infections. *See* p. 18 at AHCA's Model Contract for Florida MCOs accessible at:

16

https://ahca.myflorida.com/Medicaid/statewide_mc/pdf/Contracts/2021-10-01/Exhibit_II_A_MMA-2021-10-01.pdf.

47.     Third, Defendant covers incontinence supplies for adult Medicaid recipients enrolled in one of Florida's Home and Community Based Services (HCBS) Medicaid Waivers.

48.     The two main HCBS Medicaid Waivers for adults in Florida, the Long-Term Care (LTC) Waiver and the iBudget Waiver, have extremely lengthy waitlists.

49.     These HCBS Medicaid Waivers cover incontinence supplies. *See* Fla. Admin. Code 59G-13.070 (incorporating by reference Defendant's "Developmental Disabilities Individual Budgeting Waiver Services Coverage and Limitations Handbook" accessible at:

https://ahca.myflorida.com/medicaid/review/Specific/59G-13.070_DD_iBudget_Waiver_Services.pdf); and Fla. Admin. Code R. 59G-4.192 (incorporating by reference Defendant's "Statewide Medicaid Managed Care Long-term Care Program Coverage Policy" accessible at:

https://ahca.myflorida.com/medicaid/review/Specific/59G-4.192_LTC_Program_Policy.pdf).

50.     As of March 2022, Florida's LTC Waiver waitlist was 55,257 persons long.

17

51.     As of June 2022, Florida iBudget Waiver waitlist was 22,621 persons long.

52.     The only other HCBS Waiver in Florida for adults that covers incontinence supplies is the Familial Dysautonomia Waiver which has 15 enrollment slots and is available only to individuals diagnosed with Familial Dysautonomia.

53.     Thus, the totality of Defendant's policies establish that it only covers incontinence supplies for adult Medicaid beneficiaries aged 21 or older who (1) are institutionalized in a nursing facility, (2) are enrolled in a capped slot in a Florida HCBS Waiver program, (3) or, are enrolled in managed care, are diagnosed with AIDS, and have a history of AIDS-related opportunistic infection.

54.     On May 18, 2022, counsel for Plaintiffs wrote to Defendant to identify the legal issues related to the exclusion of coverage of incontinence supplies for adults and the inadequacy of the three exceptions. Plaintiffs' intent was for the letter to be a catalyst for Defendant to review and revise the policy and practice thereby avoiding the need for litigation. However, since that date, Plaintiffs have not received a response.

B.  <u>Facts of Named Plaintiffs</u>

*Named Plaintiff, Blanca Meza*

55.     Plaintiff, Blanca Meza, is a 22-year-old young adult diagnosed with spastic quadriplegic cerebral palsy, muscle spasticity, neuromuscular scoliosis, partial epilepsy, and incontinence without sensory awareness. Blanca uses a gastronomy tube for nutrition.

56.     Blanca lives at home with her mother and guardian, Aide Hernandez, and her father, Juan Romero Meza.

57.     Blanca is a DRF constituent.

58.     Because of her disabilities, Blanca is unable to work and receives SSI benefits.

59.     As an SSI recipient, Blanca is categorically eligible for Medicaid. She has been enrolled as a Florida Medicaid recipient since she was an infant.

60.     Blanca's current managed care plan is Sunshine Health.

61.     Due to her disabilities, Blanca is incontinent of bladder and bowel. Her treating physician, Dr. Rita Nathawad, has prescribed incontinence briefs and underpads as the most appropriate form of treatment for Blanca's incontinence as well as to prevent skin breakdowns, ulcers and infections that result from sitting in wet and soiled undergarments.

62.     Defendant covered Blanca's incontinence supplies as medically necessary supply items under Florida Medicaid until she turned 21 years old. Her ongoing medical need for incontinence briefs and underpads is also unchanged.

19

63.    In August 2021, Blanca's treating physician, Dr. Rita Nathawad, submitted a prescription for incontinence supplies to the managed care plan, Staywell Health Plan, Inc., that administered Blanca's Florida State Plan Medicaid benefits.[1]

64.    On August 18, 2021, the managed care plan denied Dr. Nathawad's prescription on the basis that the incontinence briefs and underpads were not covered services under State Plan Medicaid.

65.    On August 20, 2021, Dr. Nathawad wrote a second letter to the managed care plan and asked it to reconsider the denial of incontinence supplies because they are medically necessary for Blanca.

66.    On October 2, 2021, the managed care plan again denied Dr. Nathawad's prescription on the basis that the supplies were not covered by State Plan Medicaid.

67.    In the period since Blanca's 21st birthday, Blanca's family has been paying out-of-pocket for her incontinence supplies. These outlays have caused financial and emotional stress for Blanca's family.

---

[1] On October 1, 2021, WellCare of Florida, Inc. (WellCare) merged with Sunshine Health and all Medicaid beneficiaries enrolled in WellCare's Staywell Medicaid Managed Care plan were transferred to Sunshine Health. Thus, Plaintiff's current Medicaid managed care plan is Sunshine Health.

68.     The ongoing out-of-pocket outlays for Blanca's incontinence supplies are not sustainable for her family. She faces an ever-increasing threat of adverse health effects arising from sitting in wet and soiled undergarments due to a lack of access to medically necessary incontinence supplies. These adverse health effects include skin breakdown, decubitus ulcers, infections, and pain, all of which have been prevented to date due to the ongoing care and devotion of her family and other caregivers, and an adequate supply of necessary incontinence supplies obtained at her family's expense. Without these supplies, these adverse health effects will create need for more – and more expensive – treatment, which may include hospitalization, surgery, wound care, specialized medical equipment, and placement in a nursing facility, or death.

69.     The cost of Blanca's incontinence supplies is approximately $188.00 per month. Independent of the health and well-being impacts of the adverse health effects that may develop from inadequate treatment of her incontinence, the cost of treating these effects: hospitalization, surgery, wound care, specialized medical equipment, will be far larger.

70.     The opinion of Blanca's treating provider is that the most appropriate place for Blanca to receive care and to live is in her home, where she has lived all her life. With adequate incontinence supplies provided to her at home, Blanca has no medical need for care in a hospital or nursing facility.

71.     Hospitalization or placement in a nursing facility will create their own risks to Blanca's health and life. Her disabilities make her highly susceptible to respiratory and other life-threatening infections. Placement in an institution, like a nursing facility or hospital, would expose her to such infections.

72.     Blanca's incontinence supplies would be covered by Florida's Medicaid if she moved into a nursing facility.

73.     However, in contrast to the approximately $188.00 monthly cost of her incontinence supplies, Blanca's cost to Medicaid as a nursing facility resident would be approximately $6,720.00 per month.

74.     Blanca's incontinence supplies will be covered by Florida's iBudget Waiver or the LTC Waiver but she is not enrolled in either Medicaid HCBS and both have significantly long waitlists.

75.     Blanca's incontinence supplies would be covered under Florida Medicaid if the state determined that she is diagnosed with AIDS and has a history of AIDS related opportunistic infections, but Blanca is not diagnosed with AIDS.

76.     At all times relevant to this matter, Defendant has acted under the color of state law in failing and refusing to provide coverage of medically necessary incontinence supplies for Blanca under Florida's Medicaid program.

77.     Blanca has suffered, is suffering, and will continue to suffer irreparable harm because of Defendant's ongoing unlawful policy of failing to

cover incontinence supplies under Florida's State Plan Medicaid program for non-institutionalized adults aged 21 and older who not diagnosed with AIDS.

*Named Plaintiff, Destiny Belanger*

78.    Plaintiff, Destiny Belanger, is a 22-year-old young adult diagnosed with encephalopathy and seizure disorder. She is completely incontinent of bladder and bowel.

79.    Destiny lives at home with her mother and guardian, Julie Belanger.

80.    Destiny is a DRF constituent.

81.    Because of her disabilities, Destiny is unable to work and receives SSI benefits.

82.    As an SSI recipient, Destiny is categorically eligible for Medicaid.

83.    Destiny has been covered by the Florida State Plan Medicaid program since April 2018.

84.    Destiny chooses not to participate in a Florida managed care plan and is instead her Medicaid is administered through Medicaid fee-for-service which covers her State Plan Medicaid benefits.

85.    Destiny has applied and is on the waitlist for Florida's iBudget HCBS Waiver program.

86.    Due to her disabilities, Destiny is incontinent of bladder and bowel. Destiny's treating physician, Dr. Rita Nathawad, has prescribed incontinence

supplies, including briefs, as the most appropriate form of treatment for Plaintiff's incontinence as well as to prevent skin breakdowns, ulcers, and infections that result from sitting in wet and soiled undergarments.

87.     Defendant covered Destiny's incontinence supplies as medically necessary supply items under Florida Medicaid until 2 months after she turned 21 years old. Her medical condition did not change or improve when she turned 21 nor has it changed or improved since that time. Her ongoing medical need for incontinence supplies is also unchanged.

88.     On or around May 2021, Destiny's guardian, Julie Belanger contacted Fletcher's Home Care, a Medicaid provider of incontinence supplies located in Jacksonville, Florida.

89.     Fletcher's Home Care stated that Natalie's State Plan Medicaid coverage does not include coverage for incontinence supplies because she is over age 21.

90.      In the period since Destiny's 21st birthday, Destiny's family has been paying out-of-pocket for her incontinence supplies.

91.     Solely because of her family's ongoing private payment for Destiny's necessary medical supplies, she has been able to avoid the threat of adverse health effects arising from sitting in wet and soiled undergarments due to a lack of access to medically necessary incontinence supplies. These adverse health effects include

24

skin breakdown, decubitus ulcers, infections, and pain, all of which have been prevented to date due to the ongoing care and devotion of her father and an adequate supply of necessary incontinence supplies. Without these supplies, these adverse health effects will create need for more – and more expensive – treatment, which may include hospitalization, surgery, wound care, specialized medical equipment, and placement in a nursing facility, or death.

92.    The cost of Destiny's incontinence supplies is approximately $200.00 per month. Independent of the health and well-being impacts of the adverse health effects that may develop from inadequate treatment of her incontinence, the cost of treating these effects: hospitalization, surgery, wound care, specialized medical equipment, will be far larger.

93.    The opinion of Destiny's treating provider is that the most appropriate place for Destiny to receive care and to live is in her home, where she has lived all her life. With adequate incontinence supplies provided to her at home, Destiny has no medical need for care in a hospital or nursing facility.

94.    Hospitalization or placement in a nursing facility will create their own risks to Destiny's health and life. Her disabilities make her highly susceptible to respiratory and other life-threatening infections. Placement in an institution, like a nursing facility or hospital, would expose her to such infections.

95.     Destiny's incontinence supplies would be covered by Florida's State Plan Medicaid program if she moved into a nursing facility.

96.      However, in contrast to the approximately $200.00 monthly cost of her incontinence supplies, Destiny's cost to Medicaid as a nursing facility resident would be approximately $6,720.00 per month.

97.     Destiny's incontinence supplies would be covered by Florida's iBudget Waiver or the LTC Waiver, but Medicaid has not enrolled her in either and both have significantly long waitlists.

98.     Destiny's incontinence supplies would be covered under Florida Medicaid if the state determined that she is diagnosed with AIDS and has a history of AIDS related opportunistic infections, but Plaintiff is not diagnosed with AIDS.

99.     At all times relevant, Defendant has acted under the color of state law in failing and refusing to provide coverage of medically necessary incontinence supplies for Destiny under Florida's State Plan Medicaid program.

100.    Destiny has suffered, is suffering, and will continue to suffer irreparable harm because of Defendant's ongoing unlawful policy of failing to cover incontinence supplies under Florida's State Plan Medicaid program for non-institutionalized adults aged 21 and older who not diagnosed with AIDS.

### VII. CAUSES OF ACTION

<u>First Cause of Action:  Mandatory Home Health Services under the Federal</u>

Medicaid Act

101.   Plaintiffs incorporate and re-allege paragraphs 1 through 100, as if set forth fully herein.

102.   Under federal Medicaid requirements, states must "provide…for the inclusion of home health services for any individual who, under the State plan, is entitled to nursing facility services…." 42 U.S.C. §1396a(a)(10)(D); 42 C.F.R. §§440.70(a)(1), (b)(3). Thus, home health services are a mandatory benefit category for Florida Medicaid recipients. *Id.*

103.   Defendant's policy to deny Plaintiffs, and all similarly situated putative class members, coverage of incontinence supplies under Florida's State Plan Medicaid program violates the Medicaid Act's mandatory home health care requirement, 42 U.S.C. §§1396a(a)(10)(A), 1396a(a)(10)(D), 1396d(a)(4), enforceable by Plaintiffs and the putative class under 42 U.S.C. §1983, in that it eliminates coverage of a mandatory home health service—incontinence supplies— for categorically needy non-institutionalized adult Medicaid beneficiaries.

Second Cause of Action: Title II of the ADA

104.   Plaintiffs incorporate and re-allege paragraphs 1 through 100 as if set forth fully herein.

105.   Each of the Plaintiffs is "a qualified individual with a disability" within the meaning of 42 U.S.C. §12131(2). Each of the Plaintiffs has multiple

27

physical or mental impairments that substantially limit one or more major life activities, including the substantial limitation of their bowel and bladder function. 42 U.S.C §12102(2)(B). Each of the Plaintiffs meet the essential eligibility requirements for receipt of medical supplies under the home health care services benefit category.

106.   Defendant is the director responsible for operation of a public entity, pursuant to 42 U.S.C. §§12131(1)(A) & (B).

107.   Defendant's practice to provide incontinence supplies to those living in institutions, such as nursing homes, but not to those living in the community, violates the Americans with Disabilities Act, 42 U.S.C. §§12131-12134, and its implementing regulations, including 28 C.F.R. §§35.130(b)(3) and (b)(8), which prohibit discrimination on the basis of disability through the use of non-necessary eligibility criteria or methods of benefits administration; *id.,* §35.130(d), which requires that services be made available in the most integrated setting appropriate to the needs of qualified individuals with disabilities; and *id.,* §35.130(b)(7), which requires that reasonable modifications be made to state program policies, practices or procedures to avoid discrimination on the basis of disability.

<u>Third Cause of Action: Section 504</u>

108.   Plaintiffs restate and incorporate by reference paragraphs 1 through 100 above.

109.    Plaintiffs are qualified individuals with disabilities under Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a).

110.    The Defendant directs the Florida Agency for Health Care Administration, which receives federal financial assistance.

111.    Defendant's practice of providing incontinence supplies to those living in institutional settings, such as nursing home, but not to those living in the community violates Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) and its implementing regulations, and its implementing regulations, including 45 C.F.R. §84.4(b)(4) which prohibits discrimination on the basis of disability through the use of criteria or methods of benefits administration; *id.,* §84.4(b)(2), which requires that services be made available in the most integrated setting appropriate to the needs of individuals with disabilities. Section 504 also requires that reasonable modifications be made to state program policies, practices, or procedures to avoid discrimination on the basis of disability. 29 U.S.C. §794a.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

2.    Issue a declaratory judgment pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57 that: (a) Defendant's policies, practices, and procedures governing coverage of home health services violates the mandatory service coverage

requirements of the Medicaid Act, 42 U.S.C. §§1396a(a)(10)(A), 1396a(a)(10)(D), 1396d(a)(4) and are thus invalid; and (b) Defendant's policies, practices, and procedures governing coverage of incontinence supplies for institutionalized disabled Medicaid recipients but not to non-institutionalized disabled Medicaid recipients violates Title II of the ADA and Section 504 of the Rehabilitation Act and are thus invalid;

3.     Grant a preliminary injunction on behalf of Plaintiff Blanca Meza and grant permanent injunctions on behalf of all plaintiffs that prohibits Defendant from implementing its policy of denying Medicaid coverage of medically necessary incontinence supplies to the named Plaintiffs and the putative class;

4.     Retain jurisdiction over this action to ensure Defendant's compliance with the mandates of the Court's Orders;

5.     Award to the Plaintiffs costs and reasonable attorney fees pursuant to 42 U.S.C. §1988; and

6.     Order such other relief as this Court deems just and equitable.


Dated:  July 17, 2022


Plaintiffs by their Attorneys,

*/s/ Katy DeBriere*                             */s/ Alison DeBelder*

Katherine DeBriere                    Alison DeBelder
Lead Counsel                          Fla. Bar. No.: 0561223

Fla. Bar No.: 58506                   Liam Joseph McGivern
Florida Health Justice Project        Fla. Bar. No.: 0098684
3900 Richmond Street
Jacksonville, FL 32205                 Disability Rights Florida
Telephone: (352) 278-6059             2473 Care Drive, Suite 200
debriere@floridahealthjustice.org     Tallahassee, FL 32308
                                      Telephone: (850) 617-9723
*/s/Lewis Golinker*                   alisond@disabilityrightsflorida.org
Lewis Golinker, Esq.*                 liamm@disabilityrightsflorida.org
798 Cascadilla Street, Suite A
Ithaca, New York 14850
Telephone: (607) 227-6213
lgolinker@aol.com


*Attorney is appearing provisionally subject to approval to appear pro hac vice.

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I, Aide Hernández, declare as follows:

1.    I am the mother and legally appointed guardian of Blanca Meza, a plaintiff in this case who is also moving for a preliminary injunction.

2.    I have personal knowledge of myself, my activities, and my intentions, including those set forth in the *Verified Class Action Complaint for Declaratory and Injunctive Relief*, and if called on, I would competently testify as to the matters stated herein.

3.    I have personal knowledge of my daughter, her activities, and her intentions, including those set forth in the *Complaint*, and if called on, I would completely testify to the matters stated herein.

4.    I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself and my daughter are true.

Executed on this __12__ day of July 2022.

_Aide Hdez_
Aide Hernández