## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BLANCA MEZA, et al.,

      Plaintiffs,

v.                                    Case No.

SIMONE MARSTILLER, in her official
capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

      Defendant.

_____/

## MOTION FOR CLASS CERTIFICATION

**PLEASE TAKE NOTICE** upon all the papers filed herein, Plaintiffs move

this Court, at a time and place to be determined by the United States District Judge

for the Middle District of Florida to which this case is assigned for an order

granting Plaintiffs' motion pursuant to Fed. R. Civ. P. 23 on behalf of:

> All Florida Medicaid recipients whose prescription for
> incontinence supplies has been or will be denied
> Medicaid coverage based on Defendant's exclusion of
> those supplies for recipients aged 21 and older.

Respectfully submitted this 17th day of July 2022.

Plaintiffs by their Attorney,

*/s/ Katy DeBriere*
Katherine DeBriere

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Defendant, Simone Marstiller, in her official capacity as Secretary of the Florida Agency for Healthcare Administration (AHCA), excludes coverage of medically necessary incontinence supplies for Medicaid beneficiaries aged 21 and older unless those beneficiaries are institutionalized, are diagnosed with AIDS and have a history of AIDS related opportunistic infections, or can secure a limited slot on one of Florida's Home and Community Based Services (HCBS) Medicaid Waiver programs. AHCA's exclusion violates Florida's obligation, under federal Medicaid and disability discrimination laws, to cover home health services, including incontinence supplies, for all categorically eligible Medicaid beneficiaries who have a medical need for them.

Plaintiffs therefore move the Court for an order pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, certifying a class as follows:

> All Florida Medicaid recipients whose prescription for incontinence supplies has been or will be denied Medicaid coverage based on Defendant's exclusion of those supplies for recipients aged 21 and older.

## II.    BACKGROUND ON THE MEDICAID PROGRAM

Congress created the Medicaid program in 1965 by adding Title XIX to the Social Security Act, 42 U.S.C. §§1396-1396w-6 (hereafter, the "Medicaid Act").

One purpose of Medicaid is to enable each State, as far as practicable, to furnish "rehabilitation and other services to help…[low-income]…families and individuals attain or retain capability for independence or self-care." 42 U.S.C. §1396-1.

State participation in Medicaid is optional. However, a state that chooses to participate and receives federal matching funds for program expenditures, "must comply with requirements imposed both by the Act itself and by the Secretary of Health and Human Services." *Schweiker v. Gray Panthers*, 453 U.S. 34, 37 (1981); *see also Smith v. Benson*, 703 F. Supp. 2d 1262, 1268 (S.D. Fla. 2010).

### A.    The Medicaid Act's Mandatory Categories of Eligibility

Medicaid is not available to everyone who is poor. Rather, the program only covers certain groups of needy individuals, with almost all groups being listed or referenced in 42 U.S.C. §1396a(a)(10)(A). Florida must cover the groups listed in §(a)(10)(A)(i) and has the option to cover additional groups under §(a)(10)(A)(ii); *see also* Fla. Stat. §§409.903 & .904. The groups that a state must cover, commonly referred to as the "categorically needy" or the "mandatory categorically needy," include individuals who are aged, blind, or disabled (including those who receive Supplemental Security Income (SSI) benefits), working disabled individuals, and children and pregnant women who meet federal poverty level standards. 42 U.S.C. §1396a(a)(10)(A)(i); 42 C.F.R. §435.4; *Lewis v. Grinker*, 965 F.2d 1206, 1208 (2d Cir. 1992).

Categorically needy[1] individuals are those who meet both the nonfinancial and financial eligibility requirements of Florida's Medicaid program. *See Mitson by and through Jones v. Coler*, 674 F. Supp. 851, 855 n.4 (Fla. S.D. 1987); *see also Schweiker*, 435 U.S. at 37. Categorically needy individuals retain their Medicaid eligibility, and corresponding coverage, for as long as they meet all eligibility requirements. *Mitson* at 855 n. 4; *see also* Fla. Admin. Code R. 59G-1.058(7*)*. When it enacted Medicaid, Congress stated that categorically needy people "are the most needy in the country and it is appropriate for medical care costs to be met, first, for these people." H.R. Re. No. 213, at 66 (1965); S. Rep. No. 404, 89th Cong., 1st Sess., Pt. 1, *reprinted in* 1965 U.S.C.C.A.N. 2020-21.

### B.   The Medicaid Act's Mandatory Benefits Categories

In addition to mandatory and optional categories of *eligibility*, the Medicaid Act further "requires participating states to make certain mandatory *services* available to all individuals who are covered by the state's Medicaid plan…States may also provide other, optional medical services…." *Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1326 (S.D. Fla. 2006) (emphasis added); *see also Davis v. Shah*, 821 F.3d 231, 239 (2d Cir. 2016); *Ariz. All. for Cmty. Health Centers, et al., v.*

---

[1] "Medically needy" beneficiaries, by contrast, are those individuals who meet the *nonfinancial* eligibility requirements for inclusion in one of the groups covered under Medicaid, but whose income or resources exceed the *financial* eligibility requirements for categorically needy eligibility. 42 C.F.R. §435.4; *see Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749, 750 (1st Cir. 1983); *see also Lewis*, 965 F.2d at 1208.

*Ariz. Health Care Cost Containment Sys., et al.*, No. CV-19-00517, 2021 WL 1056285, *3-4 (D. Ariz. March 19, 2021). Those mandatory benefits a state must provide are those listed at 42 U.S.C. §1396a(a)(10).

States, including Florida, must provide Medicaid beneficiaries home health services if those beneficiaries are also entitled to nursing facility services. 42 U.S.C. §1396a(a)(10)(A) & (D). This means that states must provide home health services to all categorically needy beneficiaries because, under the Act, categorically needy beneficiaries are entitled to nursing facility services. *See* 42 C.F.R. §441.15(b)(1), (c) ("a State plan must provide that…[t]he agency provides home health services to…categorically needy beneficiaries age 21 or over…" and "[t]he eligibility of a beneficiary to receive home health services does not depend on his need for or discharge from institutional care); *Davis*, 821 F.3d at 239 (finding that "[a] state is required to provide some benefits to all categorically needy individuals, including, among others, nursing facility services for persons over 21 and home health care services."); *see also* 81 Fed. Reg. 5530, 5537 (col 1) (Feb. 2, 2016) (CMS declares that the home health care services is a mandatory benefit category for categorically needy individuals).

## C.    The Medicaid Act's Mandate to Provide Incontinence Supplies

Home health services must include "medical supplies…" 42 C.F.R. §440.70(b) (cross-referencing §440.70(b)(3)), which are defined as "health care

related items that are consumable or disposable, or cannot withstand repeated use by more than one individual, that are required to address an individual medical disability, illness, or injury." *Id.* §440.70(b)(3)(i); *see also* 42 C.F.R. §441.15(a)(3) (stating that "[h]ome health services include, as a minimum…[m]edical supplies…)." Incontinence supplies are consumable health care related items that treat an individual's incontinence, which is a medical condition or a symptom of a medical condition, and which prevent related impairments, such as skin breakdown and infection. (Ex. 2, ¶9). Accordingly, and as consistently found by federal courts, incontinence supplies, including incontinence briefs, fall under the category of a medical supply. *See e.g.*, *Hiltibran v. Levy*, 793 F. Supp. 2d 1108, 1115 (W.D. Mo. 2011); *Smith*, 703 F. Supp. 2d at 1275; *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 597 (5th Cir. 2004); *Alvarez v. Betlach*, 572 F. App'x 519, 520-21 (9th Cir. 2014); *Ekloff v. Rodgers*, 443 F. Supp. 2d 1173, 1177 (D. Ariz. 2006); *see also* (Ex. 3, ¶10) (all states cover incontinence supplies for at least some Medicaid recipients. Forty-six states cover adults. Of these, 11 classify them as medical supplies; 21 others classify them jointly as medical supplies and medical equipment).

Federal Medicaid regulations prohibit states from categorically excluding specific medical supplies items: "States are prohibited from having absolute exclusions of coverage on medical equipment, supplies, or appliances…." 42 C.F.R. §440.70(b)(3)(v). In addition, CMS stated clearly that allowing coverage to

waiver recipients is not an acceptable exception to the prohibition on categorical

exclusion of items that fit the definition of medical supplies:

> "the proposed standard definitions [including medical supplies, 42
> C.F.R. §440.70(b)(3)(i)] were intended to ensure that such items will
> be available to all who are entitled to the mandatory home health
> benefit, and not restricted to individuals receiving targeted benefits
> through section 1915(c) home and community-based services (HCBS)
> waivers or the section 1915(i) HCBS state plan option. Items that
> meet the criteria for coverage under the home health benefit would be
> covered as such."

CMS, Medicaid Program; Face-to-Face Requirements for Home Health Services;

Policy Changes and Clarifications Related to Home Health, 81 Fed. Reg. 5530,

5532-33 (Feb. 2, 2016).[2] In line with this regulation, several courts have reviewed

– and rejected – Medicaid program age-based (adult) exclusions of care within the

home health benefit category. *Hiltibran v. Levy*, 793 F. Supp. 2d 1108, 1115 (W.D.

Mo. 2011) (medical supplies: incontinence supplies); *Fred C. v. Texas Health and

Human Com'n*, 988 F. Supp. 1032, 1037-38 (W.D. Tx. 1997), *aff'd*, 167 F.3d 537

(5th Cir. 1998) (medical equipment)*; Hunter v. Chiles*, 944 F. Supp. 914, 919-20

(S.D. Fla. 1996) (medical equipment); and *Esteban v Cook*, 77 F. Supp. 2d 1256,

1262 (S.D. Fla. 1999) (medical equipment)*.*[3]

---

[2] Accessible at: https://www.federalregister.gov/documents/2016/02/02/2016-01585/medicaid-program-face-to-face-requirements-for-home-health-services-policy-changes-and

[3] Medical supplies and medical equipment are both mandatory (required) component services within the home health care benefit category 42 C.F.R. § 440.70(b) and are subject to the same federal regulation and guidance: as to both, there can be no limitations on the scope of each

### III.    FLORIDA'S COVERAGE OF INCONTINENCE SUPPLIES

Florida statutory law recognizes Florida's obligation under the federal Medicaid Act to cover medically necessary home health services, including medical supplies. Fla. Stat. §409.905(4) (that statutory provision reads: "HOME HEALTH CARE SERVICES.—The agency shall pay for nursing and home health aide services, *supplies*, appliances, and durable medical equipment, necessary to assist a recipient living at home") (emphasis added); *see also* Fla. Admin. Code R. 59G-4.070.[4] However, in direct contradiction of federal Medicaid regulation, 42 CFR § 440.70(b)(3)(v), which prohibits absolute exclusions of medical supply items, Florida categorically excludes incontinence supplies for adult Medicaid recipients, except in three circumstances. Florida's coverage of incontinence supplies is limited to Medicaid recipients aged 4 through 20 when these supplies are determined to be medically necessary through a prior authorization process.[5]

---

benefit; no categorical exclusions; and no restrictions of coverage to individuals eligible for waivers. *Id.*; § 440.70(b)(3)(v); 81 Fed. Reg. 5530-67 (Feb. 2, 2016).

[4] Consistent with the requirements and prohibitions stated in *supra* FN 2, Florida, like several other states discusses coverage of durable medical equipment and medical supply items together. (Ex. 3, ¶¶10-11). Fla. Admin Code R. 59G-4.070 incorporates by reference Defendant's "Durable Medical Equipment and Medical Supply Services Coverage and Limitations Handbook" accessible at:
https://ahca.myflorida.com/medicaid/review/Specific/CL_10_100601_DME_ver1_0.pdf).

[5] Prior authorization is a term used to describe the process of the Medicaid program determining whether a prescribed benefit is medically necessary for the particular individual making the coverage request.

This coverage policy, adopted as agency rule, lists the medical supply items the State will cover, including coverage for incontinence supplies.[6]

When a Medicaid beneficiary turns 21 years old, the exclusion causes Florida Medicaid program to no longer cover incontinence supplies. As noted above, there are three exceptions to this exclusion. The three exceptions are, if the individual is: (1) institutionalized in a nursing facility,[7] (2) enrolled in a Home and Community Based Medicaid Waiver,[8] or (3) living in the community and has been

---

[6] *See* Fla. Admin. Code R. 59G-4.070 (incorporating by reference Defendant's "Durable Medical Equipment and Medical Supply Services Coverage and Limitations Handbook" accessible at: https://ahca.myflorida.com/medicaid/review/Specific/CL_10_100601_DME_ver1_0.pdf). The relevant portions of the coverage policy state:

> "Age Requirements: Disposable incontinence briefs, diapers, protective underwear, pull-ons, liners, shields, guards, pads, and undergarments are covered for recipients four (4), when a child would normally be expected to achieve continence, through twenty (20) years of age"

> "Service Limitations…[f]or recipients four (4) through twenty (20) years of age with a physical or mental condition that results in chronic incontinence, diapers, briefs, protective underwear, pull-ons, liners, shields, guards, pads, undergarments may be reimbursed up to a combined total of 200 per calendar month."

> "Non-Covered Items…Diapers and incontinence briefs of any kind for recipients 21 years and older"

[7] *See* Fla. Admin. Code. R. 59G-4.200 (incorporating by reference Defendant's "Nursing Facility Services Coverage Policy") accessible at: https://ahca.myflorida.com/medicaid/review/specific_policy.shtml.

[8] *See e.g.* Fla. Admin. Code R. 4.192 (incorporating by reference Defendant's "Statewide Medicaid Managed Care Long-term Care [LTC] Program Coverage Policy" accessible at: https://ahca.myflorida.com/medicaid/review/Specific/59G-4.192_LTC_Program_Policy.pdf) and

diagnosed with AIDS and has a history of AIDS-related opportunistic infection.[9]

These coverage limitations on incontinence supplies for adults makes Florida an

outlier among Medicaid programs across the country. (Ex. 3, ¶9).

### IV.    FACTS OF THE NAMED PLAINTIFFS

The facts of the named Plaintiffs are nearly identical. Plaintiffs Blanca Meza

and Destiny Belanger are age 21 and older. (Ex. 4 at ¶3; Ex. 5. at ¶2). They receive

SSI benefits and are therefore categorically eligible beneficiaries of Florida's

Medicaid program. (Ex. 4 at ¶¶5-6; Ex. 5 at ¶¶4-5). They have physical

impairments that substantially limit multiple major life activities, including self-

care, and operation of the major bodily functions of bowel and bladder control.

(Ex. 4 at ¶¶7-12, 25; Ex. 5 at ¶¶7-12, 20).

Plaintiffs' primary care physician has and continues to prescribe

incontinence supplies to treat their incontinence and to prevent secondary

impairments including skin breakdown and infection. (Ex. 4 at ¶12; Ex. 5 at ¶12).

Prior to turning age 21, Florida's Medicaid program authorized those supplies as

---

Fla. Admin. Code 59G-13.070 (incorporating by reference Defendant's "Developmental
Disabilities Individual Budgeting Waiver Services Coverage and Limitations Handbook")
accessible at: https://ahca.myflorida.com/medicaid/review/Specific/59G-
13.070_DD_iBudget_Waiver_Services.pdf). *But see* 81 Fed. Reg. at 5537 (prohibiting coverage
restrictions of medical supply items to waiver recipients).

[9] *See* AHCA SMMC Model Health Plan Contract, Attach. II, Ex. II-A, at pg. 18, accessible at:
https://ahca.myflorida.com/Medicaid/statewide_mc/pdf/Contracts/2021-10-
01/Exhibit_II_A_MMA-2021-10-01.pdf.

medically necessary. (Ex. 4 at ¶14; Ex. 5 at ¶14). After turning 21, based on Defendant's policy and practices described above, Florida Medicaid stopped coverage of incontinence supplies even though Plaintiffs' medical conditions and circumstances had not changed. (Ex. 4 at ¶15; Ex. 5 at ¶15). Plaintiffs therefore bring this class action to ensure that they, and those similarly situated, may access critical medical supplies to which they are entitled under federal Medicaid and disability discrimination laws.

## V.    ARGUMENT

### A.    The Class Representatives Have Standing to Bring this Claim.

Prior to conducting the Rule 23 analysis for class certification, a court must determine that at least one named class representative has Article III standing to bring each claim. *Murray v. Auslander,* 244 F.3d 807, 810-11 (11th Cir. 2001). To satisfy standing, plaintiff must establish two elements. First, plaintiff must have suffered an "injury in fact" or "an invasion of a legally protected interest which is...concrete and particularized." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003). Second, plaintiff must demonstrate a "causal connection between the injury [in fact] and the conduct complained of…." *Id.*

The class representatives have suffered concrete and particularized injury directly traceable to Defendant. Defendant has refused their requests for coverage

of incontinence supplies to which Plaintiffs are entitled under federal law. (Doc. 1 at ¶¶55-); (Ex. 4 at ¶15; Ex. 5 at ¶15); *Focus on the Fam.*, 344 F.3d at 1272. Defendant's age exclusion policy results in Plaintiffs and their families bearing the cost of these supplies out of pocket which, in turn, results in undue financial and emotional harm (Doc. 1, ¶¶67-68; 91); (Ex. 4 at ¶¶20-22; Ex. 5 at ¶18). Plaintiffs also risk skin breakdown, infection, and potential hospitalization or other institutionalization if they are no longer able to afford the incontinence supplies. (Ex. 2, ¶¶8-13) As such, Plaintiffs suffer a concrete and particularized injury due to Defendant's unlawful actions and have standing to bring this claim. *Murray*, 244 F.3d at 810-11; *Focus on the Fam.*, 344 F.3d at 1272-73.

**B.    The Proposed Class Meets the Requirements of Rule 23 and Should be Certified.**

Under Rule 23 of the Federal Rules of Civil Procedure, class certification is appropriate when (1) the threshold requirements of Rule 23(a) are satisfied and (2) one of the three requirements under Rule 23(b) has also been met. Fed. R. Civ. P. 23. Additionally, the Eleventh Circuit requires "ascertainability" of class members as "implicit in the analysis" of Rule 23(a). *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014); *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

*1. The proposed class meets the requirements of Rule 23(a).*

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs' proposed class readily satisfies these criteria.

a.    <u>Numerosity</u>

The numerosity requirement of Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all of its members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement imposes a "generally low hurdle." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Id*. at 1267 (internal citations omitted). In the Eleventh Circuit, "the general rule of thumb…is that 'less than twenty-one is inadequate, more than forty adequate....'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

The presence of unknown future class members bolsters a finding that joinder is not practicable. *Hill v. Butterworth*, 170 F.R.D. 509, 514 (N.D. Fla. 1997). The numerosity analysis also includes factors "such as the geographic

diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996). Where, for example, a case involves individuals with cognitive disabilities, "courts have found the numerosity requirement is satisfied because joinder would be impracticable due to the potential class members' disabilities…." *Susan J. v. Riley*, 254 F.R.D. 439, 458 (M.D. Ala. 2008) (citing *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)).

While a definite number of future class members is not known, information provided by Defendant supports the conclusion that the number is significant. (Ex. 8, Osterlund Aff. at ¶6). In *Smith v. Benson*, 703 F. Supp. 2d 1262, (S.D. Fla. 2010), Defendant filed a declaration in opposition to a plaintiff challenging lack of Florida Medicaid coverage of incontinence supplies for children under age 21. In that declaration, Defendant estimated that the cost of incontinence supplies' coverage for children would amount to $19 million dollars annually. (*id*.).

The estimated current cost of supplies for the named plaintiffs here is approximately $194/month, or $2328 per year. (Ex. 4 at ¶22; Ex. 5 at ¶16). Assuming the per person costs of these items was the same as in 2010, Medicaid estimated approximately 8161 child-Medicaid beneficiaries would require these

supplies. Assuming further an equal age distribution across the 17 years between ages 4 to 20 years who require incontinent supplies due to disability, there are approximately 480 Medicaid recipients with incontinence *per year* losing access to supplies as they reach their 21st birthday.

Some number of these individuals will become nursing facility residents; some will develop AIDS, and some will be able to enroll in a HCBS waiver, but even if approximately 4 out of 5 Medicaid recipients receiving incontinence supplies coverage as children continue to receive coverage through adulthood because they meet one of the exceptions to the Defendant's coverage policy, a reasonable inference can still be drawn that 96 Medicaid beneficiaries *per year* are newly unable to access these medically necessary supplies, joining the existing population of Medicaid recipients unable to access the supplies. *See Susan J.*, 254 F.R.D. at 458 (courts may draw "common sense assumptions" from facts before them to support numerosity) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.3d 925, 930 (11th Cir. 1983)).

Plaintiffs meet the other indicators for numerosity as well. Plaintiffs seek injunctive relief for future adult Medicaid beneficiaries. (Doc. 1; ¶18); *see Hill*, 170 F.R.D. at 514. Defendant's policy affects adult Medicaid beneficiaries statewide. *Walco Invs., Inc.*, 168 F.R.D. at 324. Many of these beneficiaries, including those who, like the named Plaintiffs, have cognitive disabilities, may not

15

know about federal and state Medicaid law such that they understand they are entitled to Medicaid coverage of their incontinence supplies. (Ex. 4 at 9-11; Ex. 5 at ¶¶9-10); *Walco Invs., Inc., 168 F.R.D. at 324*; *see also Susan J.*, 254 F.R.D. at 458. Plaintiffs also have limited financial resources to retain counsel individually to represent their interests. (Ex. 4 at ¶5; Ex. 5 at ¶4). In sum, an analysis of the relevant factors supports a finding that joinder of all putative class members is impracticable and, therefore, Rule 23(a)(1) is met.

b.     <u>Commonality</u>

The commonality requirement is satisfied when "questions of law or fact common to the class" are present. Fed. R. Civ. P. 23(a)(2). To establish whether questions of law or fact are common, the class members' claims must "depend upon a common contention" "capable of class-wide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2001). The relevant inquiry is whether a class action can "generate common answers apt to drive the resolution of the litigation." *Id*. This inquiry is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Accnt. Overdraft Litig.*, 307 F.R.D. 656, 668 (S.D. Fla. 2015) (internal

16

citations omitted); *see also Ioime v. Blanchard, Merriam, Adel & Kirkland, P.A.*, No. 15-CV-130 PRL, 2016 WL 829111, *4 (M.D. Fla. March 3, 2016).

There is ample proof that, as the central decision maker, Defendant "engaged in a standardized course of conduct that affects all class members." *In re Checking Accnt. Overdraft Litig.* 307 F.R.D. at 668. Namely, Defendant adopted and enforces a coverage policy which sets forth the statewide exclusion of incontinence supplies for Medicaid enrolled adults. (Doc. 1, ¶¶44). That Defendant has carved-out exceptions to that policy is also in writing. (Doc. 1, ¶¶45-49).

Specifically, Defendant's Durable Medical Equipment and Medical Supply Services Coverage and Limitations Handbook, which addresses Medicaid state plan coverage of consumable medical supplies, squarely excludes Medicaid coverage of incontinence supplies for non-institutionalized adults.[10] Defendant's non-coverage of incontinence supplies is reiterated in its LTC program guidelines which states that LTC Program coverage includes "non-durable medical equipment *not available under the State Plan* that is necessary to address enrollee needs, including consumable medical supplies, such as adult diapers…."[11]

---

[10] *See* Fla. Admin Code R. 59G-4.070 (incorporating by reference Defendant's "Durable Medical Equipment and Medical Supply Services Coverage and Limitations Handbook" accessible at: https://ahca.myflorida.com/medicaid/review/Specific/CL_10_100601_DME_ver1_0.pdf).

[11] *See* Fla. Admin. Code 59G-4.192 (incorporating by reference Defendant's "Statewide Medicaid Managed Care Long-Term Care Program Coverage Policy" accessible at: https://ahca.myflorida.com/medicaid/review/Specific/59G-4.192_LTC_Program_Policy.pdf).

Defendant's standardized course of conduct, *i.e.*, its refusal to cover incontinence supplies for all categorically needy Medicaid beneficiaries is additionally set forth in its written practice to cover supplies for those diagnosed with AIDS.[12] Defendant writes that Florida's Medicaid program will cover recipients diagnosed with AIDS "ages 21 years and older will continue to access all state plan services that are currently covered for adults and will be eligible to receive…incontinence supplies *not otherwise available to adult recipients*." (emphasis added).

Finally, Defendant has made its exclusion policy clear in the administrative decisions it renders regarding coverage for individual Medicaid beneficiaries. In instances where Medicaid beneficiaries have exercised their right under federal and state law to appeal a denial of incontinence supplies, Defendant has held that they are not entitled to the supplies because they do not fall in the allowable age range for coverage. (*See e.g.* Ex. 9).

All class members are affected by the application of Defendant's standard course of conduct – excluding Medicaid coverage of incontinence supplies for non-institutionalized, non-waiver enrolled adults who do not have an AIDS diagnosis –

---

[12] *See* p. 18 at AHCA's Model Contract for Florida MCOs accessible at: https://ahca.myflorida.com/Medicaid/statewide_mc/pdf/Contracts/2021-10-01/Exhibit_II_A_MMA-2021-10-01.pdf.

because they are denied medically necessary care that the federal Medicaid Act makes mandatory upon the States. *In re Checking Accnt. Overdraft Litig.*, 307 F.R.D. at 668 (internal citations omitted); *see also Ioime*, 2016 WL 829111 at *4. All class members are also affected by the application of Defendant's standard course of conduct – requiring that members enter a skilled nursing facility to access needed incontinence supplies – because this creates a significant risk of institutionalization prohibited by federal disability discrimination laws. *Id.* The preliminary and permanent injunctive relief sought here, asking the Court to determine Defendant's legal obligation to offer coverage of incontinence supplies to Florida Medicaid beneficiaries, will resolve Plaintiffs' and Plaintiff class members' claims "in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. Commonality is therefore met.

c.    Typicality

The typicality requirement is satisfied when the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356-57 (11th Cir. 2009). "'Class members' claims need not be identical...rather, there need only exist 'a sufficient nexus...between the legal claims of the named class representatives and those of individual class members to warrant class

certification.' "[13] *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (internal citations omitted). A sufficient nexus "exists 'if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (internal citations omitted).

Defendant, according to written agency policy and practices, fails to cover medically necessary incontinence supplies for each of the named Plaintiffs and all proposed class members because of their age. (Doc. 1, ¶¶44-53; 63-66; 87-89). As a result, the named Plaintiffs, like the proposed class members, do not have access to Medicaid coverage to which they are legally entitled. (*id.*). Similarly, the proposed remedy of ordering Defendant to offer coverage of medically necessary incontinence supplies to all categorically needy Medicaid beneficiaries will benefit Plaintiffs and proposed class members in the same way – it will give them the opportunity to access a mandated federal Medicaid benefit where it is medically

---

[13] Courts have found that "the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman, ex rel Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000); *see also Hudson v. Delta Air Lines*, 90 F.3d 451, 456 (11th Cir. 1996). However, the two requirements remain distinct, and "[t]raditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman*, 221 F.3d at 1279.

necessary. Therefore, the named Plaintiffs' claims are typical of the class. *Ault,* 692 F. 3d at 1216*; see also Williams,* 568 F.3d at 1355.

d.    <u>Adequacy of representation</u>

Finally, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," and class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotations and citations omitted)); *see also London v. Wal-Mart, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).

The adequacy of representation analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citations omitted). The class representatives must "possess the same interest and suffer the same injury as class members." *Amchem Prods., Inc.*, 521 U.S. at 625-26 (internal citations omitted). Additionally, "the adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining

21

whether…maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* at 626 n.20 (citations omitted).

Rule 23(a) is satisfied here. There is no conflict of interest between the class representatives and the absent class members. Every class member seeks to have his or her right to access medically necessary incontinence supplies under Medicaid met. All class members' interest in having their rights under federal Medicaid law upheld do not interfere with or oppose one another. *Valley Drug Co.*, 350 F.3d at 1189; *see also Amchem Prods., Inc.*, 521 U.S. at 625-26.

Furthermore, as argued *supra*, the commonality and typicality requirements of Rule 23(a) are satisfied. While the satisfaction of the commonality and typicality requirements are not sufficient on their own to satisfy the separate adequacy of representation requirement, the two other factors provide a strong indication that "the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc*, 521 U.S. at 626 n.20.

Adequacy is also met because class counsel are competent to represent the interests of the class. *Valley Drug Co.*, 350 F.3d at 1189. Disability Rights Florida and Florida Health Justice Project both have experience litigating Medicaid and

ADA claims in Florida's federal courts. Mr. Golinker has specific experience litigating Medicaid coverage of home health services, including incontinence supplies. All counsel have experience with class action litigation. Thus, Plaintiffs' counsel will adequately prosecute this action.

### 2. The proposed class meets the Eleventh Circuit's "ascertainability" requirement.

The Eleventh Circuit also requires that "the proposed class is adequately defined and clearly ascertainable." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Ascertainability is established where a proposed class "is adequately defined such that its membership is capable of determination." *Cherry*, 986 F.3d at 1304.

The proposed class satisfies the ascertainability requirement. When Defendant, or its contractor, refuses coverage of a Medicaid service, it must ensure the beneficiary receives notice and can appeal the decision. 42 C.F.R. §§ 431.206(b) & (c)(2), 438.404. Through that process, Defendant can determine who has requested coverage of incontinence supplies and been denied based on age. Defendant thus has a mechanism to identify Medicaid beneficiaries aged 21 or older who have been or will be refused coverage of incontinence supplies based on Defendant's policy. As such, the putative class is ascertainable because its "membership is capable of determination." *Cherry*, 986 F.3d at 1304.

### 3. The proposed class satisfies Rule 23(b)(2).

A proposed class must also satisfy one of the three conditions listed in Fed. R. Civ. P. 23(b). Rule 23(b)(2) is satisfied when the Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification pursuant to Rule 23(b)(2) is "appropriate only if 'the predominant relief sought is injunctive or declaratory.'" *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012) (quoting *Murray*, 244 F.3d at 812).

Here, Defendant uniformly applies statewide a home health coverage policy and exclusion practice that violate federal Medicaid and disability discrimination laws. (Doc. 1). As a result, the class representatives and putative members are impacted in the same way; that is, Defendant denies Medicaid services to which the class is entitled under federal law. (Doc. 1). Plaintiffs seek declaratory and injunctive relief to remedy this harm to the benefit of all similarly situated class members; they do not seek monetary damages. (Doc. 1). Thus, the current action, which can only be resolved through injunctive relief, is precisely the scenario for which Rule 23(b)(2) was intended. *DWFII Corp.*, 469 F. App'x at 765

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class, pursuant to Fed. R. Civ. P. 23.

Plaintiffs by their Attorneys,

*/s/ Katy DeBriere*

Katherine DeBriere
Lead Counsel

Fla. Bar No.: 58506
Florida Health Justice Project
3900 Richmond Street
Jacksonville, FL 32205
Telephone: (352) 278-6059
debriere@floridahealthjustice.org

*/s/Lewis Golinker*

Lewis Golinker, Esq.*
798 Cascadilla Street, Suite A
Ithaca, New York 14850
Telephone: (607) 227-6213
lgolinker@aol.com

*/s/ Alison DeBelder*

Alison DeBelder
Fla. Bar. No.: 0561223

Liam Joseph McGivern
Fla. Bar. No.: 0098684

Disability Rights Florida
2473 Care Drive, Suite 200
Tallahassee, FL 32308
Telephone: (850) 617-9723
alisond@disabilityrightsflorida.org
liamm@disabilityrightsflorida.org

*Attorney is appearing provisionally subject to approval to appear pro hac vice.

## CERTIFICATE OF SERVICE

I hereby certify that on 17th of July 2022, I served the foregoing along with a

copy of the Complaint and Summons on:

Simone Marstiller, Secretary
Agency for Health Care Administration
2727 Mahan Drive
Tallahassee, FL 32308
Telephone: (888) 419-3456

*/s/ Katy DeBriere*
Katherine DeBriere