# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

BLANCA MEZA, by and through her
Guardian, Aide Hernandez, DESTINY
BELANGER, by and through her
Guardian, Julie Belanger, on behalf of
themselves and all others similarly
situated, and DISABILITY RIGHTS
FLORIDA, INC.,

                   Plaintiffs,

-vs-                                    Case No. 3:22-cv-783-MMH-LLL

SIMONE MARSTILLER, in her official
Capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

                   Defendant.

_____/

# <u>O R D E R</u>

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Class

Certification (Doc. 2; Motion), filed on July 17, 2022.   In the Motion, Plaintiffs

ask the Court to certify this matter as a class action pursuant to Rule 23,

Federal Rules of Civil Procedure (Rule(s)).   Defendant Simone Marstiller, in

her official capacity as Secretary for the Florida Agency for Health Care

Administration (AHCA) filed a response in opposition to the Motion on

September 8, 2022.   <u>See</u> Response to Motion for Class Certification (Doc. 31; Response).   With leave of Court, <u>see</u> Order (Doc. 34), Plaintiffs Blanca Meza, by and through her guardian, Aide Hernandez; Destiny Belanger, by and through her Guardian, Julie Belanger; and Disability Rights Florida filed a reply in support of their Motion on October 6, 2022.   <u>See</u> Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Class Certification (Doc. 35; Reply).   In addition, the Court notes that AHCA filed a Request for Oral Argument (Doc. 32).   Upon review, the Court does not find oral argument to be necessary to the resolution of the Motion.   Accordingly, this matter is ripe for review.

## I.   Background

Plaintiff Blanca Meza is twenty-two years old and diagnosed with "spastic quadriplegic cerebral palsy, muscle spasticity, neuromuscular scoliosis, and partial epilepsy."   <u>See</u> Verified Class Action Complaint for Declaratory and Injunctive Relief (Doc. 1; Verified Complaint) ¶ 4.   Meza has lived her entire life at home with her family, where her mother, Aide Hernandez, acts as her "24-7 care provider."   <u>See</u> Motion, Ex. 4: Declaration of Aide Hernandez (Doc. 2-4; Hernandez Decl.) ¶¶ 1, 3, 25.   Plaintiff Destiny Belanger is also twenty-two years old and is diagnosed with "encephalopathy, acquired brain injury, non-intractable epilepsy, intellectual disability, and expressive language disorder."   <u>See</u> Motion, Ex. 5: Declaration of Julie Belanger (Doc. 2-5; Belanger

Decl.) ¶¶ 2-3.   She, too, lives at home with her family, where she has lived almost her entire life.   Id. ¶¶ 1, 20.   And her mother, Julie Belanger, also provides her with "24-7" care.   Id. ¶¶ 2, 20.   As low-income Florida residents with significant disabilities, both Belanger and Meza are enrolled in Florida's Medicaid program.   See Verified Complaint ¶ 1; see also Belanger Decl. ¶¶ 4-5; Hernandez Decl. ¶¶ 5-6.

Meza and Belanger are both incontinent of bowel and bladder.   See Verified Complaint ¶ 11; Belanger Decl. ¶ 12.   Their primary care physician, Dr. Rita Nathawad, has prescribed incontinence briefs and underpads to both women to treat their incontinence and prevent secondary effects such as skin breakdowns or rash.   See Belanger Decl. ¶ 12; Hernandez Decl. ¶ 12.   It is Dr. Nathawad's opinion that incontinence supplies are medically necessary for both women.   See Motion, Exs. 6-7.   Significantly, the Florida Medicaid program "authorized incontinence supplies, including adult incontinence briefs and underpads, as medically necessary and reimbursed the supplies" for each woman until they reached the age of twenty-one.   See Hernandez Decl. ¶ 14; Belanger Decl. ¶ 13.   However, two months after their twenty-first birthdays, Florida Medicaid stopped covering Belanger and Meza's incontinence supplies. See Hernandez Decl. ¶ 15; Belanger Decl. ¶ 14.

Specifically, in August of 2021, Meza's Medicaid managed care plan sent a letter to Dr. Nathawad denying Meza's request for authorization of coverage

for disposable underpads and disposable incontinence briefs because "[t]he service is not covered by your plan."  <u>See</u> Hernandez Decl. ¶¶ 16-17, Ex. A. Likewise, in May of 2021, Fletcher's Home Care informed Belanger's mother that it could not fill Belanger's prescription for incontinence briefs because "Florida Medicaid does not cover incontinence supplies for beneficiaries over age 21."  <u>See</u> Belanger Decl. ¶ 15.   Indeed, Plaintiffs allege that, with limited exceptions, Florida Medicaid categorically does not cover incontinence supplies for Medicaid recipients aged 21 and older (i.e., adults).  <u>See</u> Verified Complaint ¶¶ 4, 44.   However, according to Plaintiffs, AHCA <u>does</u> provide Medicaid coverage of medically necessary incontinence supplies for Medicaid-enrolled adults who reside in a nursing facility.  <u>See</u> <u>id.</u> ¶¶ 5, 45.[1]   AHCA does not

---

[1] The Court notes that in the Response, AHCA states that incontinence supplies are covered for Medicaid-recipients who "are <u>eligible for</u> 24-hour medical and nursing care in a residential setting, based on, among other things, a medical necessity determination for the same."  <u>See</u> Response at 2-3 (emphasis added).   This refers to the coverage available in nursing facilities.  <u>See</u> <u>id.</u> at 4 n.2 (citing <u>Medicaid Nursing Facility Services Coverage Policy</u> (May 2016)).   The Court notes the slight discrepancy between Plaintiffs' description of the exception as applying to individuals who <u>reside</u> in nursing facilities, and AHCA's description of the exception as applying to individuals "<u>eligible for</u>" nursing facility services.   It is unclear from the Response whether this difference in wording is intended to convey a difference in meaning.   Nevertheless, the policy AHCA cites appears to provide coverage for incontinence supplies only to individuals actually occupying a bed in a nursing facility.  <u>See</u> <u>Medicaid Nursing Facility Services Coverage Policy</u>, at 3 (May 2016) available at https://www.flrules.org/gateway/readRefFile.asp?refId=6634&filename=Nursing_Facility_Services_Coverage_Policy_Proposed.pdf.

As to the other exceptions, it is undisputed that AHCA provides Medicaid coverage of medically necessary incontinence supplies for adults who: 1) have been diagnosed with AIDS and have a history of AIDS-related opportunistic infection, 2) are enrolled in the Familial Dysautonomia program, or 3) are enrolled in one of Florida's other Home and Community Based Services (HCBS) Medicaid Waiver programs.  <u>See</u> Verified Complaint ¶¶ 45-52; <u>see also</u> Response at 3-4.

dispute that under its current policies, Medicaid-recipients twenty-one years of age or older are generally not eligible for incontinence supplies.   See Response at 3-4.

Through this action, Belanger and Meza, on behalf of themselves and others similarly situated, along with Plaintiff Disability Rights Florida (DRF), seek to compel AHCA "to cover medically necessary incontinence supplies through Florida's Medicaid program."   See Verified Complaint ¶ 1.   In Count One, Plaintiffs contend that AHCA's "policy to deny Plaintiffs, and all similarly situated putative class members, coverage of incontinence supplies under Florida's State Plan Medicaid program violates the Medicaid Act's mandatory home health care requirement[2] . . . in that it eliminates coverage of a mandatory home health service—incontinence supplies—for categorically needy non-institutionalized adult Medicaid beneficiaries."   See id. ¶ 103. Plaintiffs seek to enforce these provisions of the federal Medicaid Act pursuant to 42 U.S.C. § 1983.   Id.   In Counts Two and Three, Plaintiffs allege that AHCA's policy of covering incontinence supplies for individuals with disabilities living in institutions such as nursing homes, but not those living in the community, violates Title II of the Americans with Disabilities Act (ADA)[3] as

---

[2]  See 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(10)(D), 1396d(a)(4).

[3]  See 42 U.S.C. §§ 12131-12134; 28 C.F.R. §§ 35.130(b)(3), (b)(7), (b)(8), and (d).

well as Section 504 of the Rehabilitation Act (RA).[4]   Id. ¶¶ 107, 111.   Based on these claims, Plaintiffs seek entry of a declaratory judgment that AHCA's policy is invalid as it violates the Medicaid Act, Title II of the ADA, and Section 504 of the RA, and a permanent injunction prohibiting AHCA from "implementing its policy of denying Medicaid coverage of medically necessary incontinence supplies to the named Plaintiffs and the putative class."   Id. at 29-30.

## II.   Underlying Claims[5]

### A. Medicaid Act

Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., known as the Medicaid Act, "is a federal aid program designed to provide federal funding to States that choose to reimburse certain costs of medical treatment for needy persons."   See Martes v. Chief Exec. Officer of S. Broward Hosp. Dist., 683 F.3d 1323, 1324 (11th Cir. 2012).   Although state participation is voluntary, "if a State decides to participate, it must comply with all federal statutory and regulatory requirements."   Id.   A state Medicaid plan "defines both the categories of individuals eligible for benefits and the categories of services that

---

[4] See 29 U.S.C. § 794(a); 45 C.F.R. § 84.4(b)(2) and (b)(4), and 29 U.S.C. § 794a.

[5] Because it will aid in the analysis of the Rule 23 factors, the Court first summarizes the law applicable to the claims raised in this action.   The Court need not and does not express any opinion on whether Plaintiffs will be able to prevail on these claims.

are covered for those different groups."  See Davis v. Shah, 821 F.3d 231, 238

(2d Cir. 2016).   As to individuals, the Medicaid Act requires states

> to provide medical assistance to the "categorically needy," a group
> that includes "individuals eligible for cash benefits under the Aid
> to families with Dependent Children (AFDC) program, the aged,
> blind, or disabled individuals who qualify for supplemental
> security income (SSI) benefits, and other low-income groups such
> as pregnant women and children entitled to poverty-related
> coverage."

Martes, 683 F.3d at 1324 (quoting Pharma. Research & Mfrs. of Am. v. Walsh,

538 U.S. 644, 651 n.4 (2003)); 42 U.S.C. § 1396a(a)(10)(A)(i).   In addition,

states have the option of providing medical assistance to the "medically needy,"

meaning individuals "'who meet the nonfinancial eligibility requirements for

inclusion in one of the groups covered under Medicaid, but whose income or

resources exceed the financial eligibility requirements for categorically needy

eligibility.'"   Martes, 683 F.3d at 1324-25 (quoting Pharma. Research & Mfrs.

of Am., 538 U.S. at 651 n.5); 42 U.S.C. § 1396a(a)(10)(C).   "Florida has elected

to provide medical assistance to the medically needy as well as the categorically

needy."   Martes, 683 F.3d at 1325.

　　　As to the services provided under a state Medicaid plan, "the Medicaid

Act similarly specifies certain categories of mandatory and optional medical

care."   See Davis, 821 F.3d at 239; 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a).   As

relevant to this action:

[a] state is required to provide some benefits to all categorically needy individuals, including, among others, nursing facility services for persons over 21 and "home health care services." 42 U.S.C. § 1396a(a)(10)(A); id. §§ 1396d(a)(4), (7).   While a state need not provide either service to the medically needy, any state that elects to provide nursing facilities services to those beneficiaries must also provide home health services.   Id. § 1396a(a)(10)(D); 42 C.F.R. § 440.220(a)(3).

See Davis, 821 F.3d at 239; see also 42 C.F.R. § 441.15(b)(1), (3).

Significantly, "home health services" must include coverage for "[m]edical supplies, equipment, and appliances suitable for use in any setting in which normal life activities take place . . . ."   See 42 C.F.R. § 440.70(b)(3); see also 42 C.F.R. § 441.15(a)3.   Medical supplies are defined as "health care related items that are consumable or disposable, or cannot withstand repeated use by more than one individual, that are required to address an individual medical disability, illness or injury."   Id. § 440.70(b)(3)(i).   Moreover, while "[s]tates can have a list of preapproved medical equipment supplies and appliances for administrative ease," the regulations prohibit states "from having absolute exclusions of coverage on medical equipment, supplies, or appliances."   Id. § 440.70(b)(3)(v).   In accordance with the Medicaid Act, Florida law recognizes its obligation to provide Medicaid coverage for home health care services, including "supplies, appliances, and durable medical equipment, necessary to assist a recipient living at home."   See Fla. Stat. § 409.905(4).   Among other things, the Florida statute specifies that to qualify for coverage, the home

health services must be "medically necessary . . . ." Id. § 409.905(4)(c). And indeed, "[f]ederal law allows Medicaid plans to apply a 'medical necessity' test to all applicants." See Murray v. Auslander, 244 F.3d 807, 809 n.2 (11th Cir. 2001); 42 C.F.R. § 440.230(d).

Plaintiffs contend that incontinence supplies are "medical supplies" within the meaning of the above regulations. See Motion at 6. As such, Plaintiffs assert that AHCA's policy categorically excluding incontinence supplies from Medicaid coverage violates the Medicaid Act because it "eliminates coverage of a mandatory home health service—incontinence supplies—for categorically needy non-institutionalized adult Medicaid beneficiaries." See Verified Complaint ¶ 103; see also, e.g., Alvarez v. Betlach, 572 F. App'x 519, 520-21 (9th Cir. 2014); Hiltibran v. Levy, 793 F. Supp. 2d 1108, 1115 (W.D. Mo. 2011).[6] And Plaintiffs argue that this policy violates the Medicaid Act's prohibition on absolute exclusions of coverage for medical supplies. See Response at 8. In the Response, AHCA contends that it has "significant discretion to design and administer [Florida's] Medicaid programs, even with respect to the provision of mandatory services." See Response at 5. In support, AHCA cites 42 C.F.R. § 440.230 for the proposition that a state may

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

"place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."   See Response at 5.

## B. Title II of the ADA and Section 504 of the RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.10.[7]   "To state a claim under Title II of the ADA, a plaintiff must allege: (1) that [s]he is a 'qualified individual with a disability;' (2) that [s]he was 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132)).   In Olmstead v. L.C. ex rel. Zimring, the Supreme Court considered the application of this public services antidiscrimination provision in circumstances comparable to those presented by this case:

> we confront the question whether the proscription of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions.

---

[7] Plaintiffs' RA claim is essentially the same as their ADA claim, and discrimination claims of this kind are analyzed similarly under the two acts. See Allmond v. Akal Sec., Inc., 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) ("Because the same standards govern discrimination claims under the Rehabilitation Act and the ADA, we discuss those claims together and rely on cases construing those statutes interchangeably."). Accordingly, the Court will refer primarily to the ADA for the sake of brevity.

Olmstead, 527 U.S. 581, 587 (1999).   The Court answered this question with a "qualified yes."   See id.   In doing so, the Court held that the unjustified institutional isolation of persons with disabilities is a form of discrimination by reason of disability.   See id. at 597, 600-01; see also Long v. Benson, No. 4:08cv26-RH/WCS, 2008 WL 4571904, at *1 (N.D. Fla. Oct. 14, 2008) ("[A] state violates the Americans with Disabilities Act if it unnecessarily isolates disabled individuals in institutions as a condition of providing them public assistance.").

To avoid the discrimination inherent in the unjustified isolation of disabled persons, public entities are required to make reasonable modifications to policies, practices, and procedures for services they elect to provide. Nevertheless, the Olmstead Court recognized that a state's responsibility, once it determines to provide community-based treatment, is not without limits. See Olmstead, 527 U.S. at 603.[8]   Rather, the regulations implementing the ADA require only "reasonable modifications" and permit a state to refuse alterations to programs that will result in a fundamental alteration of the program or service.   See id.   In considering whether a proposed modification is a reasonable modification, which would be required, or a fundamental

---

[8] "'[W]hile "[t]he section of Justice Ginsburg's opinion discussing the state's fundamental alteration defense commanded only four votes . . . [b]ecause it relied on narrower grounds than did Justice Stevens' concurrence or Justice Kennedy's concurrence, both of which reached the same ultimate result, Justice Ginsburg's opinion controls."'" Arc of Washington State Inc. v. Braddock, 427 F.3d 615, 617 (9th Cir. 2005) (quoting Sanchez v. Johnson, 416 F.3d 1051, 1064 n.7 (9th Cir. 2005), quoting Townsend v. Quasim, 328 F.3d 511, 519 n.3 (9th Cir. 2003)).

alteration, which would not, the <u>Olmstead</u> Court determined that a simple comparison showing that a community placement costs less than an institutional placement is not sufficient to establish reasonableness because it overlooks other costs that the state may not be able to avoid.  <u>See</u> <u>id.</u> at 604. The Court explained,

> Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities.

<u>Id.</u>  Indeed, the Court recognized that the fundamental alteration defense must be understood to allow some leeway to maintain a range of facilities and services.  <u>See</u> <u>id.</u>

Thus, having considered the ADA as well as the applicable regulations, the Court concluded that the ADA requires states to provide community based treatment for persons with disabilities when: (1) the state's treatment professionals have determined that community-based services are appropriate for an individual; (2) the individual does not oppose such services; and (3) the services can be reasonably accommodated, taking into account (a) the resources available to the state, and (b) the needs of others with disabilities. <u>See</u> <u>id.</u> at 602-04, 607; <u>Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare</u>, 402 F.3d 374, 379-80 (3d Cir. 2005); <u>Frederick L. v. Dep't of Pub. Welfare of the</u>

Commonwealth of Pa., 364 F.3d 487, 493 (3d Cir. 2004); Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1181 (10th Cir. 2003). When these requirements are met, states must provide services to individuals in community settings rather than in institutions. See Fisher, 335 F.3d at 1181.

As relevant in this case, disability discrimination claims arising out of Olmstead are not limited to individuals who are institutionalized at the time of the lawsuit. See Davis, 821 F.3d at 262. Rather, "a plaintiff may state a valid claim for disability discrimination by demonstrating that the defendant's actions pose a serious risk of institutionalization for disabled persons." Id. at 263. As stated in Davis, "a plaintiff establishes a 'sufficient risk of institutionalization to make out an Olmstead violation if a public entity's failure to provide community services . . . will likely cause a decline in health, safety, or welfare that would lead to the individual's eventual placement in an institution.'" Id. at 262-63 (quoting U.S. Dep't of Justice, Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C., Q. 6 (last updated June 22, 2011)).[9]   As such, "individuals who must enter institutions to obtain

---

[9] Congress directed the Department of Justice (DOJ) to issue regulations implementing Title II and the integration mandate derives from those regulations. As such, courts have given weight to the DOJ's interpretation of that provision. See Olmstead, 527 U.S. at 597-98 ("Because the Department is the agency directed by Congress to issue regulations implementing Title II its views warrant respect." (internal citation omitted)); Davis, 821 F.3d at 263; Pashby v. Delia, 709 F.3d 307, 322 (4th Cir. 2013).

Medicaid services for which they qualify may be able to raise successful Title II and Rehabilitation Act claims because they face a risk of institutionalization." See Pashby v. Delia, 709 F.3d 307, 322 (4th Cir. 2013).

### III.    Class Certification

### A. Applicable Law

Pursuant to Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187-88 (11th Cir. 2003); Rule 23(a)(1)–(4). These four requirements "are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." Piazza v. Ebsco Inds., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982)). The party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the "numerosity, commonality, typicality, and adequacy of representation" requirements, as well as one of the alternative requirements set forth in Rule 23(b). See Valley Drug, 350 F.3d at 1188. "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."

Id.   Here, Plaintiffs seek certification of a Rule 23(b)(2) class, such that they must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." See Rule 23(b)(2).   In addition, the Eleventh Circuit Court of Appeals instructs that all classes "must present a named plaintiff who has standing to bring the claim" and "must be 'adequately defined and clearly ascertainable.'"   See AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co., 938 F.3d 1170, 1174 (11th Cir. 2019) (quoting Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)).[10]

## B. Standing

Prior to analyzing whether class certification is appropriate, courts must address the threshold question of whether the individual plaintiff has constitutional standing to raise his or her claims.   See Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987) ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule

---

[10]   The Court notes that some district courts have questioned whether the ascertainability requirement applies to classes certified under Rule 23(b)(2).   See Braggs v. Dunn, 317 F.R.D. 634, 671-72 (M.D. Ala. 2016); Jones v. Desantis, No. 4:19cv300-RH/MJF, 2020 WL 5646124, at *5-6 (N.D. Fla. Apr. 7, 2020).   The Court need not reach this issue because as discussed below, the class certified here is ascertainable.

23(a), to assert the rights of others.").   At the class certification stage, all that is required is that "at least one named class representative has Article III standing to raise each class claim."   See Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000); Cordoba v. DirecTV, LLC, 942 F.3d 1259, 1273 (11th Cir. 2019).   In the Motion, Plaintiffs assert that Meza and Belanger have standing to assert their claims because AHCA has refused their requests for Medicaid coverage of incontinence supplies to which they claim to be statutorily entitled, forcing them to bear the cost of these supplies out of pocket, resulting in financial harm and exposing them to the risk of medical complications and potential institutionalization if they are no longer able to afford the supplies.   See Motion at 11-12.   AHCA does not challenge Plaintiffs' standing in the Response.   See Response at 1-3.   Nevertheless, because standing "implicates the Court's jurisdiction to order the requested relief," the Court must consider Meza and Belanger's standing "even in the absence of an express challenge by [AHCA]."   See Anderson v. Garner, 22 F. Supp. 2d 1379, 1387-88 (N.D. Ga. 1997).

To establish standing a plaintiff must show three elements: (1) that she has suffered an "injury-in-fact," (2) that there is a "causal connection between the asserted injury-in-fact and the challenged action of the defendant," and (3) that a favorable decision by the court will redress the injury.   See Shotz v. Cates, 256 F. 3d 1077, 1081 (11th Cir. 2001) (internal citations omitted). "These

requirements are the 'irreducible minimum' required by the Constitution for a plaintiff to proceed in federal court." Id. at 1081 (quoting Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 664 (1993)) (internal citations omitted).   Additionally, in an action for injunctive relief, a plaintiff has standing only if the plaintiff establishes "a real and immediate–as opposed to a merely conjectural or hypothetical–threat of future injury."  See Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F. 3d 1262, 1284 (11th Cir. 2001).   A complaint that includes "only past incidents" is insufficient to allege a real and immediate threat of future injury.  See Shotz, 256 F. 3d at 1081.

The allegations of the Verified Complaint as summarized above demonstrate that both Meza and Belanger have been and will continue to be denied access to Medicaid coverage for their incontinence supplies based on their age.   In addition, Plaintiffs present evidence that without these supplies the quality of life for both women would be "immensely compromised" and they would be subjected to a greater risk for "skin integrity conditions, i.e. rashes, skin wounds, genitourinary and other perineum infections."  See Motion, Ex. 6 at 2, Ex. 7 at 2.   Notably, Meza provides evidence that the cost of incontinence supplies poses a financial hardship to her family such that her caregiver must ration supplies, putting the caregiver in fear that this practice will cause Meza to "develop a rash and possibly skin breakdown."  See Hernandez Decl. ¶¶ 21-

24.   Her caregiver fears that without access to incontinence supplies Meza would suffer from medical complications that would lead to hospitalization and nursing home care.   Id. ¶ 24.   Belanger's caregiver explains that her family currently has means to pay for Belanger's incontinence supplies but absent such means, "the consequences would be grave."   See Belanger Decl. ¶ 18. Specifically, her caregiver explains that the incontinence briefs prevent medical complications that would lead to hospitalization and nursing home care.   Id. The allegations show that if Meza and Belanger prevail and the Court enjoins AHCA's age-based policy, they will have the opportunity to access Medicaid coverage for their incontinence supplies while continuing to live at home. Upon review, and absent any challenge from AHCA, the Court is satisfied that Meza and Belanger have standing to pursue their claims.   See Pashby v. Cansler, 279 F.R.D. 347, 351-52 (E.D.N.C. 2011).

## C. Is the Class Adequately Defined and Clearly Ascertainable?

"Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)."   See Cherry v. Dometic Corp., 986 F.3d 1296, 1302 (11th Cir. 2021).   In Cherry, the Eleventh Circuit explained that "a proposed class is ascertainable if it is adequately defined such

that its membership is capable of determination." Id. at 1304.[11]   In contrast, "[a] class is inadequately defined if it is defined through vague or subjective criteria." Id. at 1302.

> Here, Plaintiffs propose the following class definition:
>
> All Florida Medicaid recipients whose prescription for incontinence supplies has been or will be denied Medicaid coverage based on Defendant's exclusion of those supplies for recipients aged 21 and older.

See Motion at 1.   As currently drafted, this definition is not vague or premised on subjective criteria.   Whether an individual is a Florida Medicaid recipient and has a prescription for incontinence supplies are objective facts capable of determination.   Likewise, whether Medicaid coverage for that prescription was or will be denied based on the age of the individual is a fact plainly capable of determination given the alleged state policy.   And moreover, federal regulations require state agencies to inform individuals of the reasons supporting their decisions.   See 42 C.F.R. §§ 431.206(c)(2), 431.210(b), 438.404(b)(2).

Nevertheless, AHCA contends that the proposed class definition is not ascertainable because it is overbroad.   See Response at 13.   Specifically, AHCA argues that "it is impossible to determine which Medicaid-recipients (1)

---

[11] The Cherry court discussed the requirements for class certification in the context of a request for certification under Rule 23(b)(3).   Id. at 1300.

have a medical need for incontinence supplies . . . , and (2) are at risk of institutionalization." Id.  AHCA contends that medical necessity and risk of institutionalization require individualized determinations, and as such, argues that the class is not ascertainable and class relief is inappropriate.   Id. Significantly, however, the class definition as currently proposed does not incorporate medical necessity and risk of institutionalization within its terms. Thus, AHCA's ascertainability argument first hinges on whether it is necessary to include those limitations in the class definition.   The Court finds that it is not.

As to medical necessity, AHCA asserts that "there is simply no meaningful way to determine which Medicaid-recipients over the age of 21 have a medical need for incontinence supplies." See Response at 15.   AHCA appears to contend that the class definition must include a medical necessity limitation because AHCA has the discretion to limit the provision of services to those that are "medically necessary." Id.  But Plaintiffs' Medicaid Act claim is premised on their challenge to the validity of a policy which categorically excludes incontinence supplies from coverage.   Thus, medical necessity is relevant to Plaintiffs' claim only to the extent AHCA has determined that incontinence supplies are not medically necessary for adults by definition. Whether such a determination is permissible under federal law is a question common to the entire class and will not depend on the medical necessity of such

supplies for any one individual class member.   Significantly, Plaintiffs do not seek declaratory or injunctive relief that would affirmatively require AHCA to cover the incontinence supplies for any particular individual, relief that would likely require a showing of individual medical necessity.   Rather, Plaintiffs seek only to require AHCA to end the categorical coverage exclusion, to which all class members are subject.   If Plaintiffs are successful, class members would then have the opportunity to establish their individual medical necessity through the prior authorization process.

Similarly, AHCA argues that "the determination of whether an individual is at risk of institutionalization is a highly-individualized factual determination that renders the class insufficient for certification."   See Response at 16.   But again, AHCA fails to explain why it is necessary under the circumstances of this case to include the "at risk" limitation in the class definition.   Significantly, the putative class is limited to individuals who have been or will be denied coverage for medically prescribed incontinence supplies based on the policy exclusion. Thus, while individual circumstances may differ, all class members are subject to the same harm from the same policy—lack of coverage for medically prescribed incontinence supplies.[12]   Whether this specific categorical exclusion

---

[12] For this reason, this case is distinguishable from A.R. ex rel. Root v. Dudek on which AHCA relies.   See Response at 13-15 (citing A.R. ex rel. Root v. Dudek, No. 12-60460-CIV-ZLOCH/HUNT, 2015 WL 11143082, at *1 (S.D. Fla. Aug. 7, 2015) adopted in part, rejected in part by 2016 WL 3766139 (S.D. Fla. Feb. 29, 2016)).   The proposed class in A.R. included "[a]ll current and future Medicaid recipients in Florida under the age of 21, who are (1)

"places class members at serious risk of unnecessary institutionalization" can "properly turn on systemwide proof."   See Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan, 293 F.R.D. 254, 267 n.4 (D.N.H. 2013); see also Pashby, 279 F.R.D. at 353 ("A determination that [the challenged policy] is valid or invalid on its face will resolve the claims of all potential plaintiffs, irrespective of their particular factual circumstances.").   AHCA has not shown why individualized inquiries will be necessary to resolve the common question of whether this categorical policy violates the integration mandate of the ADA.   Rather, whether this policy exposes class members to the risk of unnecessary institutionalization "is a central and common contention whose resolution will defeat or advance the claims of all class members . . . ."   See Kenneth R., 293 F.R.D. at 267.   As such, on the current record, the Court does not find it appropriate to include an additional "at risk" qualifier in the class definition beyond that which is implicit in the denial of coverage for prescribed incontinence supplies.   Nevertheless, if subsequent developments in the case

---

institutionalized in nursing facilities, or (2) medically complex or fragile and at risk of institutionalization in nursing facilities."   See A.R., 2015 WL 11143082, at *2.   The court in A.R. found that the class definition carried "an amorphous 'at risk' indicator which is elusive and lacks objective criteria defining the class."   See id. at *5.   Significantly, under the circumstances of that case, determining whether a class member was "at risk" would require "a fact intensive and case specific" inquiry into whether any particular disabled child had been injured by the challenged policies.   Id. at *6.   Absent such an inquiry, the class would include children "who have not had their community services materially reduced by the allegedly deficient policies" and thus were unharmed by the challenged policies and therefore not at risk of unnecessary institutionalization.   Id. at *5-6.   Unlike A.R., the class here is defined by the harm incurred by every class member—the denial of Medicaid coverage for medically prescribed incontinence supplies based on age.

indicate that the addition of this limitation is warranted, the Court "retains the authority to modify the class description, or even decertify the class . . . ." See Kenneth R., 293 F.R.D. at 272; see also Rule 23(c)(1)(C).

### D. Numerosity

The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors. Phillips v. Joint Legis. Comm., 637 F.2d 1014, 1022 (5th Cir. Unit A Feb. 1981).[13] "[T]he focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" Bacon v. Stiefel Lab., Inc., 275 F.R.D. 681, 690 (S.D. Fla. 2011) (quoting Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986)); Leszczynski v. Allianz Ins., 176 F.R.D. 659, 669 (S.D. Fla. 1997) (The numerosity requirement "does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient."). Factors to be considered are the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. Id. "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show

---

[13] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). Instead, a plaintiff is required to "show some evidence of or reasonably estimate the number of class members" beyond "[m]ere speculation, bare allegations, and unsupported conclusions." Barlow v. Marion Cnty. Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009). "In general terms, the Eleventh Circuit has found that 'less than twenty-one [prospective class members] is inadequate [while] more than forty [is] adequate.'" See Bacon, 275 F.R.D. at 690 (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)); see also Vega, 564 F.3d at 1267 (noting that the court has affirmed certification of a class of "'at least thirty-one individual class members'" and has also affirmed a district court's finding that a class of 34 did not satisfy the numerosity requirement). "[W]here the question of numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1)." Leszczynski, 176 F.R.D. at 670 (citing Evans, 696 F.2d at 930).

Plaintiffs assert that the numerosity requirement is met. Based on AHCA's filings in a separate lawsuit, Plaintiffs estimate that there are at least 480 Medicaid beneficiaries per year who will turn twenty-one and lose Medicaid coverage for incontinence supplies that were covered while they were children. Even assuming some of these beneficiaries will be able to receive coverage

under one of the exceptions, given the limited nature of the exceptions, it appears likely that a significant portion will fall within the class.   Although Plaintiffs do not estimate the size of the existing population of adult Medicaid recipients with prescriptions for incontinence supplies that are not covered under Medicaid based on their age, one can reasonably infer that the number of these individuals across the entire state is not insignificant.   Indeed, in the Response, AHCA does not challenge Plaintiffs' ability to meet the numerosity requirement.   Accordingly, the Court finds that Plaintiffs have demonstrated that the proposed class is so numerous that joinder of all members would be impracticable.

### E. Commonality

The commonality requirement demands that there be questions of law or fact common to the class. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011).   In this way, "commonality" "measures the extent to which all members of a putative class have similar claims."   Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006).   Commonality exists if a class action involves "issues that are susceptible to class wide proof."   Murray, 244 F.3d at 811.   The requirement is satisfied "where plaintiffs allege common or standardized conduct by the defendant directed toward members of the proposed class."   Elkins v. Equitable Life Ins. of Iowa, No. CivA96-296-Civ-T-17B, 1998 WL 133741, *11

(M.D. Fla. Jan. 27, 1998).   As such, the putative class plaintiffs' claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 349-50.   Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Id. (citation omitted); see also Dukes, 564 U.S. at 353 (quoting Falcon, 457 U.S. at 157–58).

Here, Plaintiffs allege a standardized course of conduct by AHCA—the categorical exclusion of incontinence supplies from Medicaid coverage for persons over the age of twenty-one—directed toward members of the proposed class—Medicaid beneficiaries whose prescriptions for incontinence supplies were denied based on this policy.   Notably, AHCA does not appear to dispute the existence of this policy.   Whether this categorical exclusion violates the mandatory coverage requirements of the Medicaid Act is a common question capable of class-wide resolution.   Answering this question yes or no will resolve an issue central to the Medicaid Act claims of the class in one stroke.   See Dukes, 564 U.S. at 350.   In addition, resolving this broader question appears likely to turn on other common questions such as whether incontinence supplies are medical supplies within the meaning of the statute, and whether AHCA has the discretion under federal law to categorically exclude such supplies as not

medically necessary.   For purposes of a Rule 23(b)(2) class, all that is required is the identification of one common question, see id. at 359, Plaintiffs easily meet that requirement as to their Medicaid Act claim.

Likewise, as to Plaintiffs' ADA and RA claims, it appears to be undisputed that while Florida Medicaid does not cover incontinence supplies for Medicaid beneficiaries over the age of 21 generally, it will cover those supplies regardless of age for beneficiaries residing in a nursing facility.   Plaintiffs assert that this disparity in coverage between individuals living in the community and those living in institutions, on its face, constitutes discrimination in violation of the ADA and RA.   What is required by the integration mandate of the ADA and RA, whether this categorical policy exposes class members to a serious risk of unnecessary institutionalization, and whether requiring coverage of incontinence supplies for individuals living in the community is a reasonable modification or would fundamentally alter Florida's public assistance program are common questions capable of class-wide resolution.   See Long, 2008 WL 4571904, at *1; see also Kenneth R., 293 F.R.D. at 267-68.

AHCA argues that Plaintiffs cannot satisfy the commonality requirement because the proposed class members will not "suffer the same harms" or be impacted by AHCA's policies "in the same way . . . ."   See Response at 19-20. However, by definition, all putative class members have been or will be denied Medicaid coverage for medically prescribed incontinence supplies based on their

age.   AHCA does not assert that the challenged policy applies to different class members in different ways.   And significantly, unlike the cases on which it relies, AHCA has not shown any conflicting or competing interests between members of the proposed class.   Cf. <u>Dykes v. Dudek</u>, No. 4:11cv116/RS-WCS, 2011 WL 4904407, at *5 (N.D. Fla. Oct. 14, 2011); <u>Ball v. Kasich</u>, No. 2:16-cv-282, 2018 WL 6437426, at *5-6 (S.D. Ohio Dec. 7, 2018).   While the ramifications resulting from the lack of coverage for incontinence supplies may differ among class members, given that Plaintiffs do not seek damages in this action, these factual differences do not preclude certification of the class.   <u>See Murray</u>, 244 F.3d at 811 ("[T]here is no requirement here that issues subject to generalized proof predominate over those subject to individualized proofs.").[14]

## F. Typicality

The prerequisites of commonality and typicality both "focus on whether a sufficient nexus exists between the legal claims of the named class

---

[14] AHCA also asserts that the class must be limited to the "categorically needy" or "to those Medicaid recipients who are 'entitled to nursing facility services,'" presumably because those are the individuals entitled to home health services, including medical supplies.  <u>See</u> Response at 19.   Absent such limitations, AHCA argues that "members of the putative class may not be entitled to home health care services under the Act in any circumstance."  <u>Id.</u> However, in the Reply, Plaintiffs contend that both categorically and medically needy individuals are entitled to home health services under Florida's state plan, such that "parsing the Medicaid population" is "unnecessary."  <u>See</u> Reply at 12 n.16 (citing https://ahca.myflorida.com/Medicaid/stateplanpdf/attachment_3-1-B.pdf at p. 1).   On the limited record before the Court at this time, the Court is not persuaded that the limiting language AHCA proposes is warranted.   If AHCA demonstrates or the Court otherwise determines as the case progresses that the distinction between the categorically and medically needy is relevant to the outcome of this litigation, the Court can amend the class definition at that time.  <u>See</u> Rule 23(c)(1)(C).

representatives and those of individual class members to warrant class certification." See Prado-Steiman, 221 F.3d at 1278. While commonality is concerned with group characteristics of a class as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class." See id. at 1279. Typicality is satisfied if the claims of the named plaintiffs and those of the class "arise from the same event or pattern or practice and are based on the same legal theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary." Mesa v. Ag-Mart Produce, Inc., No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224, at *6 (M.D. Fla. July 18, 2008). The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests. Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 698 (S.D. Fla. 2004). "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." Brown v. SCI Funeral Servs. of Fla., Inc., 212 F.R.D. 602, 604–05 (S.D. Fla. 2003) (quoting Kornberg, 741 F.2d at 1337).

Here, Meza and Belanger plainly satisfy the typicality requirement. Both Meza and Belanger are adult Medicaid beneficiaries with prescriptions for incontinence supplies that were categorically denied based on their age. Meza

and Belanger both live at home and their treating physician believes it is in their best interest to remain there.   While the precise medical and financial circumstances of each Plaintiff may be unique, as will be true of all class members, Meza and Belanger's <u>claims</u> are entirely typical of the claims of class members generally.   See <u>Long</u>, 2008 WL 4571904, at *2; <u>see also</u> <u>Murray</u>, 244 F.3d at 811 ("The typicality requirement may be satisfied despite substantial factual differences, however, when there is a 'strong similarity of legal theories.'" (citation omitted)).   Indeed, AHCA does not identify any way in which the interests of Meza and Belanger differ from that of the putative class members.

### G. Adequacy of Representation

The fourth prerequisite to class certification set forth in Rule 23(a) requires "that the representative party in a class action must adequately protect the interests of those he purports to represent." <u>Valley Drug Co.</u>, 350 F.3d at 1189; Rule 23(a)(4) (internal quotation omitted); <u>see also</u> <u>Piazza</u>, 273 F.3d at 1346 ("'adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel").   The purpose of the "adequacy of representation" requirement is "to protect the legal rights of absent class members" who will be bound by the res judicata effect of a judgment.   <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 726 (11th Cir.

1987).  As such, the requirement applies to both the named plaintiffs and to their counsel.  London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).

The "'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'"  Valley Drug Co., 350 F.3d at 1189 (citation omitted).  Class certification is inappropriate where some class members benefit from the same acts alleged to be harmful by other members of the class, creating a conflict of interest.  Valley Drug Co., 350 F.3d at 1189.  However, "the existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a 'fundamental' one going to the specific issues in the controversy."  Id.

Plaintiffs assert that this requirement is met because there is no conflict of interest between the named Plaintiffs and the proposed class members. They also assert that Plaintiffs' counsel has experience litigating ADA claims in federal court, as well as specific experience litigating Medicaid coverage of home health services, including incontinence supplies.  Plaintiffs' counsel also represent to the Court that they have experience with class action litigation. Significantly, AHCA does not challenge Plaintiffs' ability to diligently prosecute this action, argue that they have any significant conflicts of interest with the

proposed class members, or challenge the qualifications, experience or competence of Plaintiffs' counsel.   Upon review of the record in this case, the Court has no reason to question the adequacy of Plaintiffs or their counsel as representatives of the class.

### H. Rule 23(b) and Necessity

Finally, "a class action may be maintained if Rule 23(a) is satisfied" and the action falls within one of three types of class actions recognized in Rule 23(b).   See Rule 23(b).   Here, Plaintiffs asserts that class certification is appropriate under Rule 23(b)(2).   See Motion at 24.   Rule 23(b)(2) allows class certification where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."   Rule 23(b)(2).   Significantly, the Rule does not require "'that the party opposing the class . . . act directly against each member of the class.   The key is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class.'"   See Anderson v. Garner, 22 F. Supp. 2d 1379, 1386 (N.D. Ga. 1997) (alteration in original) (quoting 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil § 1775 (2d ed. 1986)).   As such, "'[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or

more of them to seek relief under Rule 23(b)(2).'" Id. (quoting Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978)).

Here, AHCA's policy categorically excluding incontinence supplies for persons over the age of twenty-one from Medicaid coverage applies generally to the proposed class.   Moreover, Plaintiffs seek a declaration that this policy violates federal law and a permanent injunction prohibiting AHCA from continuing to implement this policy.   If Plaintiffs were to succeed in their challenges, such injunctive and declaratory relief would be appropriate with respect to all members of the class.   Thus, this case "squarely and easily meets the requirement for certification under Rule 23(b)(2)."   See Lebron v. Wilkins, 277 F.R.D. 664, 668 (M.D. Fla. 2011); Welch v. Theodorides-Bustle, 273 F.R.D. 692, 695 (N.D. Fla. 2010); Long, 2008 WL 4571904, at *1.

Nevertheless, AHCA argues the Court should exercise its discretion to deny the Motion because class relief is not necessary under the circumstances of this case.   See Response at 10-13.   AHCA contends that "[c]lass-based relief is not appropriate in circumstances where an injunction for the individual plaintiffs would amount to exactly the same relief as an injunction for an entire class."   Id. at 11.   In support, AHCA cites to United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799 (5th Cir. 1974) where, after resolving the merits of the lawsuit, the former Fifth Circuit found it unnecessary to review the district court's decision denying class certification

because "whether or not appellants are entitled to class treatment, the decree to which they are entitled is the same." See United Farmworkers, 493 F.2d at 812. Because the declaratory and injunctive relief that Plaintiffs seek in this case would, if granted, "benefit all similarly-situated individuals, irrespective of whether a class is certified," AHCA contends that class certification is not "necessary" and should be denied. Id. at 12-13. The Court is not persuaded.

Significantly, Rule 23 does not include any provision requiring a party seeking class certification to establish the necessity of such relief. As such, the Court questions whether such a factor is an appropriate consideration. Indeed, in Cherry v. Dometic Corp., the Eleventh Circuit observed that "[t]he Supreme Court has made clear that district courts must grant class certification in 'each and every case' where the conditions of Rule 23(a) and (b) are met." See Cherry, 986 F.3d at 1303 (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398-400 (2010)). As such, the Cherry court reasoned that courts "lack discretion to add requirements to the Rule." Id. at 1303. Although Cherry concerned the application of an administrative feasibility requirement, the Cherry court's reasoning calls into question the viability of a purported necessity requirement that is not contained in the text of Rule 23.

Regardless, even to the extent the Court has discretion to deny class certification for lack of necessity, the Court declines to do so here. As set forth

above, this case presents a quintessential Rule 23(b)(2) class action claim. Plaintiffs allege that a state policy, applicable to the entire class, is invalid on its face.   Notably, AHCA has not withdrawn this policy pending resolution of this lawsuit, nor has it stipulated that it will abide by the Court's ruling as to all putative class members.   Cf., e.g., Casale v. Kelly, 257 F.R.D. 396, 406 (S.D.N.Y. 2009) (explaining that "an affirmative statement from the government defendant that it will apply any relief across the board militates against the need for class certification"); Lebron v. Wilkins, 277 F.R.D. 466, 467 (M.D. Fla. 2011); Jones, 2020 WL 5646124, at *7.   Moreover, this case is not akin to United Farmworkers where the relief to all potential class members is complete once the singular challenged decision is overturned.   See United Farmworkers, 493 F.2d at 812 (finding that the city officials should be "directed to . . . allow the farmworkers' housing project to tie into the City's water and sewer system").   Rather, in this case, if relief is warranted, AHCA must refrain from applying the invalid policy in the individual cases of the numerous potential class members.   Thus, in the Court's view, the full scope of any decree and its enforceability by the class members should be "explicit and unmistakable."   See Rodriguez v. Percell, 391 F. Supp. 38, 42 n.2 (S.D.N.Y. 1975); see also Gayle v. Warden Monmouth Cnty. Corr. Inst., 838 F.3d 297, 310 (3d Cir. 2016) (cautioning that the "circumstances in which classwide relief offers no further benefit . . . will be rare, and courts should exercise great

caution before denying class certification on that basis" because "[a]fter all, the imposition of individual relief is no guarantee it will be carried over to other class members").

In light of the foregoing, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(a) and (b)(2), and as such, the Motion is due to be granted.

Accordingly, it is

**ORDERED:**

1.   Plaintiffs' Motion for Class Certification (Doc. 2) is **GRANTED**.

2.   The Court, having found that Plaintiffs have met the prerequisites to class certification set forth in Rule 23, Federal Rules of Civil Procedure, certifies the following Class with respect to Counts I, II, and III of the Complaint:

> All Florida Medicaid recipients whose prescription for incontinence supplies has been or will be denied Medicaid coverage based on Defendant's exclusion of those supplies for recipients aged 21 and older.

3. The Court designates Plaintiffs Blanca Meza, by and through her guardian, Aide Hernandez and Destiny Belanger, by and through her Guardian, Julie Belanger as Class Representatives, and appoints Plaintiffs' Counsel, Katy DeBriere, Alison DeBelder, and Lewis Golinker as Class Counsel.

**DONE AND ORDERED** in Jacksonville, Florida this 27th day of March, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:
Counsel of Record